# CINCINNATI BUTCHERS' SUPPLY CO. v. MEIER PACKING CO.

(Circuit Court of Appeals, Seventh Circuit. June 5, 1926.)

No. 3651.

**1. Patents ⊕⇒328.**

Schmidt patent, No. 1,388,899, for dehairing carcasses, claims 3, 10, and 54, *held* not infringed.

**2. Patents ⊕⇒328.**

Schmidt and Schmidt patent, No. 1,388,898, for dehairing carcasses, claims 8, 11, and 28, *held* not infringed.

Appeal from the District Court of the United States for the District of Indiana.

Patent infringement suit by the Cincinnati Butchers' Supply Company against the Meier Packing Company. From a decree dismissing its bill, plaintiff appeals. Affirmed.

Walter F. Murray, of Cincinnati, Ohio, for appellant.

Edwin E. Huffman, of St. Louis, Mo., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Appellant appeals from a decree dismissing its bill, charging infringement by appellee of claims 8, 11, and 28 of patent No. 1,388,898, to Charles G. Schmidt and Oscar C. Schmidt, on August 30, 1921, and claims 3, 10, and 54 of patent No. 1,388,899, to Oscar C. Schmidt, on August 30, 1921. No. 1,388,898, to Schmidt and Schmidt, called S. & S., covers a small machine for dehairing a single carcass at one time. No. 1,388,899, to Oscar C. Schmidt, called S., is a larger machine, having means by which a succession of carcasses are caused to pass endwise through the machine while being dehaired.

The application by S. & S. was filed May 31, 1916, as serial No. 100,839. After it was ready for allowance, it was abandoned and a new application filed December 17, 1917. Application by S. was filed September 22, 1916, as serial No. 121,671, and, after ready for allowance, it was abandoned and a substituted application was filed December 17, 1917. When S. & S. application was filed in May, 1916, the specification described what are now called U-shaped bars as "bars 9, arranged and shaped to form a pocket or grate." · When application by S. was filed in September, 1916, those supporting bars were described as "approximately U-shaped."

In November, 1916, the S. & S. specification was changed to read "substantially semicircular or U-shaped" bars. As a part of the letter, making that and other amendments, applicant presented a drawing showing the bars, or carcass-supporting device, in Stallman, No. 1,101,155, and also that presented by S. & S., and both appear to be substantially semicircular.

In the S. & S. patent, the dehairing means were and are carried on arms rotating on a single shaft on one side of the machine, and applicants were told that so using one shaft, instead of the two shown in Stallman, did not constitute invention. Under the original application by S., in connection with the rejection of certain claims on Kohlhepp, No. 1,125,562, he called attention of the Examiner to the following in the Kohlhepp specification: "It is a very important object of this invention to provide spiral rolls, drums or cylinders, or plain rolls or drums with spiral rings, bars, bands, etc., secured thereto for supporting the carcasses, moving or conveying the same past the scrapers," etc., and said:

"It is clear that in applicant's device no such movable and mechanically operated means are used, and since the only moving element in applicant's device is the dehairing means, it is clear that the endwise movement as imparted to the carcass by mechanically operated parts proceeds exclusively from them, which is not the case in Ref. Kohlhepp, where the supporting means, rolls, drums, cylinders, etc., coact with the dehairing means for moving the carcass. For these reasons, it is evident that these movable elements which support the carcass cannot be considered equivalent to applicant's stationary, rigidly connected trough, in which the carcass rests, nor could those elements be considered to be the equivalent of a trough for any purpose."

These explanations and limitations are important in considering the claims here in question. Claims 8, 11, 28, and 54 relate to the rotating of the carcass, and claims 3 and 10 to the endwise movement.

When the substituted application was filed by S. & S., it said: "Machines of this character as heretofore constructed have usually embodied independent moving means for rotating the carcass during action thereon by scrapers; these independent means usually comprising rotating supports, traveling supports, or traveling tables or sprocket chains, or additional beaters other than

13 F.(2d)—4

the scrapers primarily concerned in the scraping or cleaning operations."

In the substituted application, filed at the same time for S., it was said: "In machines of the character mentioned as heretofore constructed, independent means have been employed, such as conveyers, traveling hooks, and rotating supports, for conveying the carcass past the scraping or cleaning means." Then follows, in each application, a statement of the difficulties and expense of construction and operation of those old machines, and the purpose of each of the inventors to avoid them.

Because of our conclusion that the case should be disposed of upon the question of infringement, we deem it unnecessary to go into the question of validity.

Claims 3 and 10 of the S. patent are as follows:

"3. In a hog scraper, the combination of rigidly connected U-shaped bars arranged in spaced relation parallel to each other to form a trough-shaped support for carcasses, parts of these bars being laterally inclined all in the same direction, and hair-removing means operating in the spaces between the bars and adapted to rotate a carcass while cleaning it and to advance it at the same time lengthwise through the trough in consequence of the contact of the carcass with the inclined portions of the bars."

"10. In a hog scraper, the combination of bars arranged in spaced relation to form a trough-shaped support for carcasses, parts of these bars being inclined, and hair-removing means operating in the spaces between the bars and adapted to rotate a carcass while cleaning it and to advance it at the same time lengthwise through the trough by reason of its contact with the inclined portions of the bars."

Claims 8, 11, and 28 of S. & S. are as follows:

"8. In a hog scraper, the combination of a set of spaced, substantially U-shaped bars rigidly connected to form a pocket-shaped grate adapted to receive a carcass, a shaft supported outside of this grate and positioned to extend along on one side thereof, scraper arms on this shaft extending through the spaces between the bars and reaching into the grate, and means to rotate this shaft so that the scraper arms effect removal of the hair from the carcass while rotating the carcass between them and the bars of the grate."

"11. In a hog scraper, the combination of a pocket-shaped grate composed of substan-

tially U-shaped bars adapted to receive a carcass, a shaft positioned outside of this grate, scraper arms on this shaft which extend into the grate, and means to rotate this shaft so that the scraper arms thereon rotate the carcass between them and the side of the grate while also removing the hair."

"28. In a machine of the character described, the combination of carcass supporting means, and rotary dehairing means comprising dehairing devices moving transversely past the supporting faces of said supporting means into contact with the carcass supported thereby, said carcass supporting means comprising relatively stationary means to confine the carcass within the radius of action of said scraping means, whereby said scraping means rotate the carcass."

In both claims 3 and 10 the thing to be accomplished is the endwise movement of the hog carcass by means of contact with the laterally inclined bars forming the carcass support. In the original applications and in the substituted applications, the carcass-supporting grates, or bars, are substantially U-shaped or semicircular, and stationary, and there is the clear intention to exclude any idea of a carcass-supporting device in any other form, and to exclude rotating carcass supports of every form.

[1] In the alleged infringing device, the carcass support is not stationary, semicircular, or U-shaped, but is cylindrical, and rotates continuously during the dehairing process, and it is clearly obvious that, as appellant said in the Patent Office, in regard to Kohlhepp, supra, these movable elements, which support the carcass, cannot be considered equivalent to appellant's stationary, rigidly constructed trough. It is quite as apparent that appellant's laterally inclined bars of its U or trough shaped carcass support, in claims 3 and 10, and the rotating substantially spiral members in the alleged infringing device, cannot be construed as equivalents, because, if so considered, they would both be equivalents of the inclined ribs, which extend spirally around and within the cylinder to assist in delivering carcasses therethrough, as shown in Kohlhepp, No. 1,012,-654, and as shown in Meier, No. 1,042,412. In such case, claims 3 and 10 would have to be held invalid. They are not infringed.

Claim 54, while not limited by its terms to a single shaft carrying the rotating dehairing means, yet the specification, both in the drawings and in the language, makes it necessary to so limit the claim; otherwise, in that respect it would be illegal, as infringing Stallman. There a shaft carrying the dehairing means was located on each side of and below the carcass support. In the alleged infringing device, there are three such shafts, carrying dehairing means, none of which bears that fixed relation to the other parts of the machine described in claim 54.

In appellant's machine S., Fig. 1, the shaft carrying the dehairing means is located in the stationary U-shaped carcass support, below and at the left of the carcass; whereas, in the appellee's device there are three such shafts, going longitudinally through and as a part of the cylinder constituting the carcass support, so that, while the arms carrying the dehairing means rotate about those shafts, the shafts themselves and the carcass-supporting cylinder rotate around the carcass. Despite this very great difference in construction, appellant says that the dehairing means upon but one of the shafts acts upon the carcass at a time, and that the operation and effect by reason thereof is an infringement of appellant's machine, because the single dehairing means in appellee's machine that so acts pushes the carcass against the side of the U-shaped support, just as is done in appellant's machine, thereby retarding the rotation of the carcass.

While that particular thing seems to be an element in claims 8, 11, and 28, it is not an element in claim 54, and it does not appear to be true in fact. The thing claimed in 54 is the reaching out of the arm and the dehairing means across the vertical plane of the center of gravity of the carcass on the carcass support for simultaneously acting upon the carcass, with a raising and dragging effect to rotate the carcass. We find no such construction or operation in appellee's machine. From the testimony and the exhibits, it is apparent that in appellee's machine the dehairing means upon the three shafts acts simultaneously much, if not all, of the time, and, while the carcass is from time to time in contact with the carcass support, it is in contact with the rotating concave surface, and not with a stationary upright wall, as shown in appellant's device.

[2] What is said of claim 54 is so applicable to claims 8, 11, and 28 that the conclusion is inescapable that appellee's machine does not infringe those claims.

The decree is affirmed.