## W. H. BUTCHER PACKING CO. v. CINCINNATI BUTCHERS' SUPPLY CO.

Circuit Court of Appeals, Tenth Circuit.
October 16, 1929.

No. 64.

Edwin E. Huffman, of St. Louis, Mo., for appellant.

Frank A. Whiteley, of Minneapolis, Minn., for appellee.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge. This is an appeal from an interlocutory decree in a patent case, finding infringement, awarding an injunction, and directing an accounting. Various claims of two patents are involved; one group of claims in each patent covers a means of cleaning used in hog-dehairing machines; another group of one of the patents covers

the means of discharging the carcass from the machine after it is cleaned.

Both patents involved were issued August 30, 1921. Patent No. 1,388,898 was issued to Charles G. Schmidt and Oscar C. Schmidt. It is a machine designed for small packing houses; claims No. 1, 2, 5, 7, and 17 cover the discharging apparatus; claims No. 11, 13, 28, 31, and 32 cover the cleaning apparatus, which is identical with the cleaning apparatus of the second patent, although the claims in the latter patent are couched in different, and perhaps more accurate, language. Patent No. 1,388,899 was issued to Oscar C. Schmidt. This machine is designed for use in larger packing houses, and has an entirely different method of discharge; the claims for such not being in issue here. Claims No. 13, 38, 42, 43, 48, 52, 54, and 55 cover the cleaning apparatus found to be infringed. Taking up first the cleaning apparatus of both patents:

Scraping hogs by machinery, and the use of revolving members to which are attached metal scrapers, is old in the art. Bouchard, 235,731; Flanagan, 307,777; Kohlhepp, 720,-702, 1,002,930, 1,125,560, 1,125,562; Meier, 1,024,412; Burke, 1,036,959. The patentees here do not assert patentability on the broad ground of such elements, and these references are not structurally close enough to the plaintiff's claims to require close analysis. Plaintiff's claims are based on the design of a machine for the convenient, efficient, and economical application of scrapers to carcasses. It consists of a basket or cradle of metal bars in which rests the carcass; through such bars extend beater arms, on the ends of which are heavy rubber beaters, tipped with metal scrapers. The beater arms are in turn attached to a single revolving axis outside and toward the bottom of the cradle. The carcass is put into the cradle; the beater arms, extending from head to tail, revolve rapidly; the action of the rapidly revolving arms turns the carcass around, tosses it over to the far side of the cradle, which retards its rotation, gravity draws it back to the beaters, and with this combined rotary and orbital movement the hog is cleaned. The machine is a commercial success.

The plaintiff describes its machine in language more accurate than the above, as follows: "It comprises a cradle of bars, a single shaft and rotating beater arms moved on the shaft within the cradle between the bars from below. The cradle is so shaped in reference to the rapidly moving beater arms and beaters thereon that the hog carcass is in effect supported from below by the beaters and is restrained at the sides by the bars of the cradle. The beaters have the effect of simultaneously rotating the carcass and scraping the hide off all parts of it, removing hair and scurf and toe-nails from every part of the carcass. The bars of the cradle have the effect of retaining the carcass in position to be rotated above the beaters in such wise that as the carcass rotates it alternately engages one side or the other of the cradle, which exercises a required retarding effect upon the rotation of the carcass. The beaters, although made up of separate flexible beater members carried by arms of a spider, are rotated at such a speed as to constitute in effect a cylindrical surface engaging the carcass. The combined effect of this rapidly moving cylindrical surface contacting the carcass from below and the bars of the cradle at the sides contacting the sides of the carcass first at one side and then at the other, gives to the carcass an orbital movement in which it is turning about an imaginary axis drawn through the carcass and at the same time is rotating about a center between the bars; i. e., moving bodily back and forth in a roughly elliptical or circular path from one set of bars to the other."

The issue in the case being that of infringement, there is no occasion for determining the validity of the patents, if no infringement is found. Before the question of infringement can be determined however, it is necessary to inquire to some extent into the prior art, for the purpose of determining whether the patents involved are entitled to a liberal construction, or otherwise, and to determine whether the patents are at best but improvements in a crowded art, or disclose a basic idea. Only one reference need be considered for this purpose, that of Stallman, No. 1,101,155. The Stallman patent was issued June 23, 1914. It is a mechanical hog scraper, consisting of a cradle of metal bars, with two series of revolving flexible metal-tipped scraper arms working through the metal bars; there is a shaft on each side of the cradle, instead of on one side only, as in the patents in suit. The action of the beater arms scrapes the hog, rotates it, and tosses it about. Only two of the Stallman machines were built, and they were in operation for several years, although it is claimed that their work was not satisfactory.

The trial court afforded the plaintiff's patents a fairly liberal construction, and by so doing found infringement. It declined to consider Stallman, or at least deflected its force to a great extent, because, to use the

language of the memorandum opinion, "the machine did not prove to be practically successful and according·to the testimony only two of them were constructed, whereas, the plaintiff's patents have been extensively manufactured, sold and used, their utility is beyond question, and the issuance of the patents is prima facie evidence of the novelty of the combination."

We think the trial court was in error in this statement, and that the Stallman patent must be considered as much a disclosure as if it had been more widely used, and this for two reasons: In the first place the statute (35 USCA § 31) extends the privilege of patentability only to those devices which are "not patented or described in any printed publication in this or any foreign country" or "not in public use or on sale in this country for more than two years prior to his application, unless the same is proved to have been abandoned," etc. Entirely irrespective of the matter of use, a man is not entitled to the reward given inventive genius, if his invention had theretofore been disclosed to the public through the public records of the Patent Office. The statute rewards invention, and not diligence in unearthing prior patents which have not been turned into commercial success. In the recent case of Milburn Co. v. Davis, etc., Co., 270 U. S. 390, 46 S. Ct. 324, 70 L. Ed. 651, it was held that a patent was anticipated by a prior application which disclosed the idea, although it did not claim it. The court discussed at some length the questions of prior patents, publications, use, and disclosure, and summed it all up by saying that "one really must be the first inventor in order to be entitled to a patent."

As far as the Stallman patent discloses ideas claimed by the patents in suit, it is an anticipation, whether any machine was ever used. Moreover, irrespective of the patent, the public use of two machines for a period of years bars the patentee from claiming the rights of inventor. In the recent case of Linville v. Milberger, 34 F.(2d) 386, this circuit held that the use of one plow for two or three plowing seasons was a disclosure. In Brush v. Condit, 132 U. S. 39, 10 S. Ct. 1, 33 L. Ed. 251, the Supreme Court held that the manufacture of one lamp, and its use for 2½ months, was a public use within the meaning of the statute. In Egbert v. Lippmann, 104 U. S. 333, 336, 26 L. Ed. 755, a patent for corset springs was defeated by a prior use by one person of a set of springs concealed in a corset. This was held to be a public use, and the court said: "We observe, in the first place, that to constitute the public use of an invention it is not necessary that more than one of the patented articles should be publicly used. The use of a great number may tend to strengthen the proof, but one well-defined case of such use is just as effectual to annul the patent as many."

We first turn to plaintiff's own interpretation of the claims in issue. Plaintiff's expert, at the conclusion of his evidence, summarized them as follows (the inserted figures are ours): "The thing in my opinion which distinguishes the structure of operation of plaintiff's machine from prior art machines, is that in the patents in suit the essentials that stand out that are not found in the prior art are (1) the provision of cradle of bars for receiving the carcass, (2) a single scraper shaft having scrapers mounted upon it, upon flexible arms, the shaft and scrapers being so disposed as when the shaft is rotated the scraper arms and scrapers lift and turn and scrape the carcass. (3) The shape of the cradle or pockets in which the carcass is disposed being such that the action of the scrapers upon the carcass tends to move the carcass against one side of the walls, and the coaction of the side wall and the scrapers tends to cause the carcass to leave that side wall and move toward the other side wall to again be engaged by the scrapers and put through the same orbital movement. In its contact with the side walls the carcass is retarded in its revolutions. (4) The carcass is retarded in its rotation about its axis, and the scrapers scraped along the surface of the carcass on account of the difference of the peripherial speed between that of the scrapers and that of the carcass. These features are not found in the prior art in any of the machines of the patents that I have seen or have discussed to-day."

Comparing these points with Stallman, we find in Stallman:

(1) The stallman patent describes "a supporting cradle with an inclined section * * * The bars *10* and *11* of the cradle are spaced apart to permit cleaners or beaters to act upon the hog through the intermediate spaces."

(2) Stallman's scrapers are described as a series of hubs "to which are attached a series of cleaners or beaters *17* each formed by looping a section of canvas belting or similar semiflexible material and uniting its opposite ends at *12.*" The difference, then, consists of Stallman having two scraper shafts and the patents here but one. The file wrapper discloses that in an abandoned application the examiner rejected a claim based on a single scraper, and said: "It is not invention to put dehairing means on one side only, in

view of the fact that the means is shown on two sides in Stallman of record." And later he held: "It would not be invention to remove one shaft and beater of Stallman. If this is done, the device of Stallman will perform its work in the same way as applicant's device does."

The appellant argues that this is an adjudication and cites I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 47 S. Ct. 136, 71 L. Ed. 335. Appellee answers by asserting that later the examiner allowed other claims which were a restatement of the single-scraper idea. The file wrapper does not indicate any intention on the part of the examiner to recede from his twice-taken position, and it is probable that if the single scraper claim was finally allowed, the examiner overlooked it. However that may be, the statement of the examiner is sound; dropping one scraper shaft, and reversing the rotation of the other, involves no inventive genius.

(3 and 4) The Stallman patent refers to the supporting cradle or bars, and says: "And said bars serve to hold the hog in the desired position to be acted upon by the cleaners while the action of the cleaners upon the hog causes the hog to rotate upon the supporting bars to expose all portions of its body to the action of the cleaners." There is dispute as to the evidence on the question of whether, in the operation of the Stallman machine, the carcass touches the side walls, but is tossed up and down on the beaters, alone. It would seem that an irregular shaped carcass must be thrown against the cradle bars, when tossed about by these rapidly revolving scrapers. But, whether so or not, the Stallman patent discloses that as a function of the bars—"to hold the hog in the desired position"—which sufficiently discloses the idea as to prevent a later patenting of it.

Considering the method of operation as a combination, counsel in his brief, describes it: "The simple combination of appellee's patents resides in the provision of a cradle of spaced bars, a single beater shaft with beaters thereon moving through the spaces of the bars so as simultaneously to lift, to turn and to scrape the hog while the bars at the sides of the beaters support the hog in its position above the beaters and by their contact with its rotating carcass retard that rotation to produce efficient scraping."

As we understand this contention, it is that, when the scrapers attached to the spider wheel on the power shaft come in contact with the carcass of the hog between the bars of the cradle, they impart to the carcass a dual motion, one a revolution of the carcass on an axis, and the other an irregular orbital movement of the carcass as it revolves, bringing it in contact with both sides of the cradle and thereby slowing up, at intervals, the speed of revolution. Counsel then contends that the device constructed under the Stallman patent would not produce this dual motion of the hog's carcass, and that defendant's commercial device does, and that, therefore, Stallman does not anticipate and defendant's device does infringe. But the necessary result of the disclosure of the Stallman patent, if not its actual operation, is to bring about the same result. The Stallman beaters must cause the carcass to rotate. The force of them must toss the carcass away from them; that is, give to it the orbital movement. The patent discloses that it is thrown against the side bars, and friction operates to retard the movement in Stallman, just as in the patents in suit.

From this it will be seen that, if plaintiff's patents are valid, the patentable features fall within a narrow compass. We turn now to the defendant's machine. In plaintiff's machine, there is a support that is rigid during the cleaning operation; that is, a supporting cradle through the bars of which the cleaning scrapers work. Defendant's machine operates on quite a different theory. It consists of metal arms forming a cradle which rotates; the cradle drops down into the scalding vat and picks up the hog; the cradle then rotates upwardly until the carcass is brought in apposition to the cradle axis; this axis is a drum upon which are affixed the cleaner arms. The carcass remains there during the cleaning operation, supported and rotated and tossed about by the rotating cleaner drum, and held in position by the cradle arms. When the cleaning process is finished, the cradle moves on and discharges the carcass on the gambreling table.

The similarity claimed is that in both machines the carcass is acted upon by revolving cleaners, which serve to impart a rotating and orbital movement to the carcass, which is kept in the machine, and its rotation retarded, by the cradle bars. But exactly the same things are gone through in Stallman, and the structural difference between plaintiff's and defendant's machine is more marked than between plaintiff's and Stallman's.

The plaintiff's patents were construed by the Circuit Court of Appeals of the Seventh Circuit in Cincinnati Butchers' Supply Co. v. Meier Packing Co., 13 F.(2d) 48. A decree dismissing the bill was affirmed. The

.machine there claimed to infringe is not the same as defendant's machine, but it did have a rotating carcass support, as does the defendant's machine here. The court held, construing plaintiff's patents:

"In the original applications and in the substituted applications, the carcass-supporting grates, or bars, are substantially U-shaped or semicircular, and stationary, and there is the clear intention to exclude any idea of a carcass-supporting device in any other form, and to exclude rotating carcass supports of every form.

"In the alleged infringing device, the carcass support is not stationary, semicircular, or U-shaped, but is cylindrical, and rotates continuously during the dehairing process, and it is clearly obvious that, as appellant said in the Patent Office, in regard to Kohlhepp, supra, these movable elements, which support the carcass, cannot be considered equivalent to appellant's stationary, rigidly constructed trough. * * * From the testimony and the exhibits, it is apparent that in appellee's machine the dehairing means upon the three shafts acts simultaneously much, if not all, of the time, and, while the carcass is from time to time in contact with the carcass support, it is in contact with the rotating concave surface, and not with a stationary upright wall, as shown in appellant's device."

We are in entire accord with this construction of plaintiff's claims. We hold that there is no infringement of the claims of either patent covering the cleaning function of the machine.

Claims Nos. 1, 2, 5, 7, and 17 of patent No. 1,388,898 cover the discharging function of the smaller machine. When the cleaning process is complete, the cradle is rotated upwardly about its axis, which is immediately above the beater arms. The carcass is thus carried up and discharged on the gambreling table, which is level with the top of the machine. Stallman discharges in a very different manner; one side of the cradle being swung downward on its axis, the carcass dropping to a table underneath. But the defendant's machine discharges in still a third way; the cradle arms, which have picked the carcass from the vat, continuing their rotation after the stop for the cleaning process, discharging the carcass at the side, so to speak. Without going into the question of patentability, or further extending this opinion, we find no infringement of these claims.

Finding no infringement, and not passing upon the validity of the claims in suit, it is unnecessary to discuss presumptions, commercial success, or many other points ably briefed and argued.

The decree will be reversed, with instructions to dismiss the bill.