## ATHEY TRUSS WHEEL CO. v. MOORE & MOORE, Inc.

District Court, E. D. Pennsylvania. May 21, 1929.

No. 4119.

Barnes, Biddle & Morris, of Philadelphia, Pa. (Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., of counsel), for plaintiff.

H. A. McCarthy and P. C. Wagner, both of Philadelphia, Pa. (Melville Church and Clarence B. Des Jardins, both of Washington, D. C., of counsel), for defendant.

DICKINSON, District Judge. This cause concerns letters patent No. 1,435,788 and No. 1,623,457, issued, one to I. H. Athey, and the other to his assignee, under the respective dates of November 14, 1922, and April 5, 1927. They both relate to a wheel construction to carry a chassis or body for the transportation of heavy loads; the vehicle being especially adapted to be employed when the ground to be traversed is so soft or obstructed as to forbid the use of the ordinary wheeled vehicle.

The general type of construction is that of the caterpillar tractor, with which the war tanks made us familiar. Indeed, there would be no claim to invention (except in details of mechanical construction), if the wheels of the patent were of the tractor type. The invention relates, however, to vehicles whose motive power is supplied from a source outside of themselves, and which thus may be designated as trailers. Such vehicles, having no motive power of their own, present problems which are not present in the case of vehicles of the tractor type.

The earlier patent is averred by the plaintiff to concern itself with principles of oper-

ation and consequent construction, and to be thus what is known to patent lawyers as "basic." The later patent deals with special features of mechanical construction, in the sense of how or through what mechanical construction the result is achieved, not with principles of operation or construction in accordance with which it is achieved.

There are so many different approaches to the real question in this cause that a choice among them is a source of embarrassment. There is, to begin with, a classification of patent cases according not so much to what has been invented as to what has been practically accomplished. The prior art is rich in knowledge of all the applicable principles of operation and construction of, for illustration, an instrument of transportation, but it is poor in accomplishment, in that there is no vehicle which fills the need of those who have urgent use for it. Some one supplies this long-felt want, by producing a vehicle by the use of which that which all wish to do can be done. When, however, his work comes to be analyzed, it is found that all he has done is to apply the lessons taught by the prior art. His vehicle is new, in the sense that there is now a vehicle where before there was none, but there is nothing new in the principles either of construction or operation, and really all he has done is to apply what the prior art taught. The analogue is that of a word picture in a publication of a construction. Does the man who first gives it physical form and introduces it into use thereby gain the right to monopolize its use or sale? How much does the fact (usually present) that others before him have made more or less abortive and unsuccessful attempts strengthen his claim? The full success, which he has attained where others failed, is open to the comment that he has made a better vehicle than those before in use, but he has invented nothing. This usually takes us into that misty zone of whether something done is the fruit of invention or the application of mere mechanical skill.

We shall speak first of the earlier patent. This is in the general class above mentioned. We make the findings, which may as well be now made as later, that there was no satisfactory trailer vehicle on the market until that of the plaintiff appeared; that the trade recognized its value as soon as it was put on trial, and because of this it was given a preference which was exclusive; and that the trailer of the defendants is so faithful a copy of the plaintiff's commercial wheel that the differences between them are not worth the telling and are merely colorable. This, however, does not imply, nor ought it to suggest, any finding of bad faith on the part of the defendants. As a matter of law they were not bound to yield a monopoly to the plaintiff in the trade of supplying these trailers, merely because the plaintiff had the best one up to that time put upon the market, or indeed was the first to bring out an altogether acceptable one. The defendants had the right to do what we may assume they did do, to seek to obtain the best advice they could upon the question whether the wheels which they wished to build would infringe upon the patent rights of the plaintiff. This it was not only their right to do, but to fight a monopoly is sometimes a duty. The modern Hampden, who takes it upon himself to fight monopoly, may be as deserving of applause at the one immortalized in history.

There is in the bill no complaint of unfair competition, so that we must squarely face the question of the plaintiff's right to the monopoly given by the patent laws. In this view of the case the question (which we repeat in order to present the defendants' view) is whether the plaintiff should be given the rights of a patentee because of what has been practically accomplished, and in fact new-created, in the face of the other fact that nothing has been invented, in the sense of the discovery of anything which adds to the teachings of the prior art.

We may, for reference to this type of cases, cite, among many others which might be cited, the following: Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523; Haiss Mfg. Co. v. Link Belt Co. (C. C. A.) 31 F.(2d) 432; Crozier-Straub v. Graham (C. C. A.) 28 F.(2d) 321; Downington Mfg. Co. v. Guardian Trust Co. (C. C. A.) 29 F.(2d) 887.

The appeal made to uphold patents on this practical ground is of course resisted, because the issue of a patent is to deprive others of the right to do all which the patentee has done, which is to make use of his ability and skill in giving embodiment to the teachings of the prior art in the form of a mechanical construction, and further that the moment a broad construction is given to the claims of a patent, which cannot be defined in terms of a principle of operation or construction, but can only be defined in terms of a result accomplished, it is not possible to give the plaintiff anything (beyond his particular form of construction) without giving him more than that to which he has a right.

This case affords us an illustration. It is a truth in a measure admitted by the par-

ties that the commercial wheels of the plaintiff and defendants are the same, but that neither of them is the wheel of the patent. A feature of the commercial wheels, without which they would not practically operate, is the allowance of slack in what we will call the track chain. All wheels have, because they must have, some slack. The value of this is not as great in the tractor type of wheel as it is in the trailer type. The failure of the first constructed trailers is attributed to the feature of insufficiency in this slack. Obviously, the wheel that had too little slack would add to the power required to propel it, and to the strain and wear and tear upon the parts, over the wheel which had the called-for slackness, and, if the track chain was made too tight, the wheels would not revolve at all, but would operate as a sled runner. The maker who was the first to appreciate the value of slack in a trailer over that in a tractor, and gave this needed additional slack, brought upon the market a much better vehicle than those with less slack. The difference, however, is wholly in the degree of looseness, or the extent of the slack, and can with difficulty be defined without giving to the contributor of the thought of slackness more than his contribution to the art deserves, or giving him practically nothing. It was the debate over these considerations which delayed the issue of the letters patent.

The theory of the defense is that the patentee sought to overcome this difficulty in his own way, by defining the extent of the slackness to which he claims a monopolistic use, and that upon the rights of the patentee as so defined the defendants do not infringe. This brings before us the real question presented, but suggests another approach to it, which may more clearly present it, although at the cost of some repetitions.

Among the illustrative exhibits is one which has all the allurements of a toy. It consists of a metal bridge, road, rails, or track on and over which a wheel vehicle may be drawn to and fro. This gives us an ocular demonstration of the basic principle of the claimed invention. It is that of having a prepared track over and along which a wheeled vehicle may run, thus surmounting any obstacle which the ground to be traversed may present. If to the thought of having this prepared track is added the thought of having it flexible, so that it can be moved around, so as to encircle both wheels, and, upon the ends being united, can be carried along with the vehicle and laid down as a track in advance of the wheels, you have the essential elements in the invention which the plaintiff seeks to sustain. If this track is made a chain track with flat links, flexible only in one direction, being rigid in the opposite, and, when viewed as a track lying on the ground, having some concavity, with all these elements present to operate as called upon, the chain track having such slackness as that a link of the chain is laid down by gravity as a track in front of the wheel before the latter impinges it, you have (ignoring minor features) the trailer of the patent. Essentially this construction, with motor mechanism added, is that of the caterpillar tractor. The vehicles of the patents in suit are intended, as already stated, to be of the trailer type. A degree of slackness of chain is essential to the trailer, which may be dispensed with in the tractor. Indeed, as likewise already stated, the failure of the trailers first tried and the success of plaintiff's trailer may be found in the degree of this slackness of chain. Every element in the claims of the patent under discussion is found in the earlier patents. There is, however, no patent in which they are all found. The real difference between the wheels before made and that of the patent is to be found in the greater slackness of the chain in the latter.

■ This brings us to the defence. It is essentially a denial of infringement. It is more particularly that the plaintiff, in order to have granted to it the issue of a patent, distinguished the claims to be allowed from the possessions of the prior art, in that the claims called for a sufficient slack to permit a link of the chain to take track position by gravity before it was impinged by the wheel, whereas the prior art knew only of a less slack. This, then, is a limitation of the claims imposed by the patentee for the purpose of securing the issue of the patent, and, having thus been granted a patent, the claims cannot afterwards be expanded.

This doctrine is a plain one. A reference to the file wrapper shows that the application for the earlier patent was filed March 1, 1917, and not issued until November 14, 1922. In the interim its experience was one of repeated denials, until it reached the Commissioner. As we read the history, it is one of the denial of a patent until the extra length or slackness of the track chain had been defined, as it is in the claims, and, when so defined, the defendants do not infringe.

■ The later patent is of less importance to the plaintiff, and of little value commercially without the first. It has a value, however, in litigation. We have no space left for a discussion of it, and content ourselves

with a statement of the conclusions reached. In stating them, we are not unmindful of the doctrine, with which we are in full accord and sympathy, that the defendants cannot escape infringement by taking only a part of the patented invention.

We base our ruling as to the earlier patent, not upon the finding that the defendants have not trespassed upon the plaintiff's commercial make of wheels, nor upon the finding that the latter is not a patentable advance upon the prior art, but wholly upon the finding that the patentee so limited his claims as that the commercial wheel neither of the plaintiff nor of the defendants is the wheel of the patent, and that the wheel of the defendants in consequence does not infringe.

The findings made and conclusions reached are as follows:

1. The wheel of the patent and the commercial wheel of the plaintiff supplied a need of the trade, which all earlier makes had failed to supply in the trailer type of vehicle.

2. The trade at once recognized the wheel of the plaintiff as adapted to its needs and to supply the trailer for which the trade had been looking, and plaintiff's trailer at once supplanted all other different makes offered in the market.

3. The wheel of the defendants is a copy of the plaintiff's commercial wheel, except in the minor unimportant features. It was purposely made and intended to be as strong an appeal to the purchasing trade as that of the plaintiff, and to present the same features and claims to merit.

4. The wheel of the defendants is not, however, the wheel of the patent, in that the track chain has not enough slack to permit of the laying down by gravity of a link of the chain in advance of the wheel and before it is impinged thereby.

5. The wheel of the defendants is in consequence not an infringement of the wheel of patent No. 1,435,788.

6. Letters patent No. 1,623,457 are found to be invalid, in view of the Edwards patent, No. 124,042, and the prior patent to Athey.

7. The bill of complaint should be dismissed for want of equity, and a formal decree to this effect may be submitted; no formal decree being now made, but jurisdiction of the cause being retained for this purpose.

The following cases, among many others which have been cited to us, bear upon the conclusions reached: Winans v. Denmead, 15 How. (56 U. S.) 330, 14 L. Ed. 717; Delaware Seamless Tube Co. v. Shelby Steel Tube Co. (C. C. A.) 160 F. 928; Heap v. Greene (C. C. A.) 91 F..792; Sundh Electric Co. v. General Electric Co. (D. C.) 198 F. 116; Penfield v. Chambers Bros. Co. (C. C. A.) 92 F. 630; Merrill v. Yeomans, 94 U. S. 568, 24 L. Ed. 235; White v. Dunbar, 119 U. S. 47, 7 S. Ct. 72, 30 L. Ed. 303.