## ATHEY TRUSS WHEEL CO. v. MOORE & MOORE, Inc.

### No. 4241.

Circuit Court of Appeals, Third Circuit.
Sept. 16, 1930.

On Rehearing, Feb. 9, 1931.

Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., and Barnes, Biddle & Myers, of Philadelphia, Pa. (Lynn A. Williams and Ross O. Hinkle, both of Chicago, Ill., and Francis Biddle, of Philadelphia, Pa., of counsel), for appellant.

C. B. DesJardins and Melville Church, both of Washington, D. C. (Paul C. Wagner, of Philadelphia, Pa., of counsel), for appellee.

Before WOOLLEY, Circuit Judge, and J. WHITAKER THOMPSON and JOHNSON, District Judges.

WOOLLEY, Circuit Judge.

The plaintiff, assignor of two letters patent to Isaac H. Athey, charged the defendant with infringement of claims 8, 9, 10, 11, 12, 13, 21 and 22 of the first patent (No. 1,435,788) and claims 3, 8, 9, 10 and 11 of the second patent (No. 1,623,457) for inventions in traction vehicles and traction mechanism. The trial court having found the first patent not infringed and the second invalid dismissed the bill. 32 F.(2d) 781. This appeal followed.

### First Patent.

The invention relates to a chain traction device differing from the familiar caterpillar type in that the power for its movement is not self-contained but comes from outside, thus converting it into a tender or trailer used mainly in low, heavy and swampy land, and resembling the caterpillar type in that the characteristics of its organization are a vehicle body mounted on an axle, a beam pivotally and rotatably mounted on each end of the axle, a pair of load-supporting wheels rotatably mounted on each end of each beam, an endless track or tread chain on each side of the vehicle extending fore and aft, above, below and partly around each pair of wheels, made up of a plurality of tread links, trussed or self-stiffening, arcuate or outwardly convex at the bottom so as to form a solid base tread or artificial road on which the vehicle can move, yet which will fold and permit the chain to travel around the wheels, the tread chain being long enough to permit slack or allow play in its movement around the pair of wheels.

The plaintiff, though claiming the combination to be new, admits that each element was in and of itself old in the art except the length of the chain or tread feature and the slack that accumulates in front of the leading wheels. It admits, as it must, that slack on all power-driven belting, endless chains and bands was old in many arts, otherwise they would bind, but maintains that the slack of the invention was new in principle—"useful slack,—slack in an environment which gave it (the slack) function and utility." So, slack being one of the elements of the combination and the only one which has any claimed novelty, the controversy below, as here, turned on its inventive quality. On this question the inventor had trouble in the Patent Office when he applied for a patent for mechanism with a loose or slack track chain, describing this element as "an idling space between the wheels," "the length of the chain being somewhat greater than the length required to pass around the wheels." These claims were rejected as too indefinite in view of the art. The applicant then amended by filing claims for a chain *"substantially"* greater in length than the loop distance," a "tread chain * * * greater in length than half the circumference of each of the wheels plus twice the distance between their axes." These were rejected for the same reason. Again the applicant amended by claims describing the slack to be "sufficient to permit each link to assume *substantially* its supporting position before the weight of the first wheel is imposed thereon." These, too, were rejected. The Patent Office knowing that there were many kinds of slack in many arts—even in this art—insisted from the beginning that the applicant be specific with

respect to the slack of the mechanism. The applicant tried again and again to state, by qualifying words, the inventive slack without fixedly limiting or defining it until the Patent Office forced him to define the precise amount of slack constituting his invention. This finally he did by using different expressions in the allowed claims in suit, such as, the chain being of a length which permits "sufficient slack to develop to allow the leading link of said track section to occupy a position as a continuation of said arc prior to assumption of load," the "said track chains being trussed to provide convex arcuate wheel-supporting track sections and of such length as to permit the leading links thereof to assume positions as a continuation of said arcs before assumption of load," "the said track chain being of such length as to permit the links thereof to assume their load supporting position before assumption of load." These phrases mean the same thing which is that the leading link—the one ahead of the link on which the wheel is resting—should move to a load supporting position before the wheel (with the load) rolls upon it, or, stated differently, that before the load descends through the wheel upon a link, that link shall have reached a position which is an extension or "continuation" of the stiffened arcuate tread, or, stated in still another way, the leading link must have extended flat upon the ground or as nearly so as the stiffened arc will allow and there await the wheel. That is the slack of the invention to which, on rejection and abandonment of everything else, the patent is limited.

In practice the plaintiff found that a tread chain which conforms precisely to these defined claims is impracticable. It extends too far in front, prevents easy turning of the vehicle and presents other difficulties arising from too much slack. So in its commercial device the plaintiff employs a shorter chain and smaller slack where, through the wheels, the load descends (partially) on the leading tread link before it assumes its final flattened and arcuate position as defined by the claims. And this, too, is precisely what the defendant does in its commercial device. So neither the plaintiff nor the defendant is using the slack of the invention. Yet the plaintiff says the defendant infringes, on the contention that the lesser slack falls within the range of equivalents of the invention of the greater slack. The slack of the defendant's mechanism is the slack generally of the prior art and particularly the slack on which many claims of the patent application were rejected for want of invention.

The very thing on which, for want of invention, a patent was refused can scarcely be the equivalent of an invention for which a patent was granted.

Mechanically admirable as is the plaintiff's device and broadly useful as it has become in certain trades, we are constrained to hold that the defendant has not infringed the claims of this patent in suit.

### Second Patent.

The invention of the second patent to Athey relates to the same type of traction vehicle whose load-supporting wheels roll on an endless track chain or tread. The salient characteristic of this invention is an endless line of trussing members on the interior of the endless chain that bridge each track shoe from hinge to hinge and are connected or attached to each shoe solely by the hinge pintles. By these inwardly extending and, in one position, unyielding truss members there is produced a rigid, solid, arcual tread; yet, by the flexibility of the same truss members when in another position the tread in its movement is permitted to curve around the wheels. It is an alluring device. When first seen, the thought of invention springs to the mind. Without doubt, invention it is, but we hold with the learned trial judge that in principle and in crude detail it was first conceived by George H. Edwards in 1872, Letters Patent No. 124,042, "for improvement in braced chains," meaning, trussed chains. The Athey improved details are not inventions. If for any reason the Edwards patent does not constitute a complete anticipation of the patent under discussion, then, clearly, the second patent to Athey is invalid in view of his own first patent.

The decree of the District Court is affirmed.

### On Petition for Rehearing.

The plaintiff-appellant, in its petition for rehearing, complains of four errors which it says we made in our opinion, indicating error in the decree of non-infringement. The first is our statement that, "In practice the plaintiff found that a tread chain which conforms precisely to these defined claims is impracticable. It extends too far in front, prevents easy turning of the vehicle and presents other difficulties arising from too much slack." This, the appellant asserts, has no foundation in the record. That may be true; we shall assume it is true; though the point was made somewhere, probably in the argument. However that may be, the fact is the plaintiff in

its commercial device departs for some reason from the slack of the claims which were allowed and uses the lesser slack of claims which were rejected.

The plaintiff next complains that we unduly limited the claims of the patent. We were not conscious of placing any limitations upon them. We took the claims as they are written and applied them as they are limited by their own terms after long travail in the Patent Office. Nor were we conscious of reading into them a meaning different from that disclosed by their words. The plaintiff asks us to construe the claims not by their express terms but by the patent and the original application and particularly by a broad expression in the specification "that the chain 39 is made *somewhat* greater in length than is necessary for it to pass around the bridge wheels."

In view of the history of the patent application and of the condition as to slack on which the claims were in part ultimately allowed, we were compelled to find that the claims are subject to their own limitations and that the invention is no broader than that which they disclose.

The next error into which, it is alleged, we fell was in speaking of the slack in the mechanism of the patent as the slack generally of the prior art, against the plaintiff's contention that the slack here is novel in location, kind and utility. We think it is the same kind of slack, with a different location, because of the difference in position of the moving instrumentalities, the wheels, yet we cannot find patentable novelty or utility in using common art slack for slack purposes even in a new mechanism.

The plaintiff next complains that we "failed to give to the slack defining expressions of the claims in suit * * * the range of equivalency to which the disclosure of the patent, the merit and novelty of Athey's contribution to the art and the proceedings in the Patent Office on Athey's application clearly entitle them." It was because of the action of the Patent Office in rejecting broad claims as to the dimensions of the slack and allowing narrow claims definitely limiting them and because of Athey's acquiescence in its action (which amounted to a disclaimer) that we felt unable to give the claims allowed an equivalency equal to the claims rejected. We were, under the law, forced to hold that Athey was estopped to assert for the allowed claims of his patent an equivalency or scope commensurate with that of his rejected claims. Weber Electric Com-

pany v. Freeman Electric Company, 256 U. S. 668, 41 S. Ct. 600, 65 L. Ed. 1162; I. T. S. Rubber Company v. Essex Rubber Company, 272 U. S. 429, 47 S. Ct. 136, 71 L. Ed. 335.

And, finally, the plaintiff emphasizes the whole mechanism as a patentable combination and minimizes the element of slack. It is a combination; and for such a combination, within the claims, the patent may be valid; yet it is not an invention without the slack of the claims. So, however approached and however discussed, the question of infringement turns on the slack defined by the claims.

The decree holding noninfringement remains affirmed.