## KAUSAL v. AMERICAN SEATING CO.
### No. 4431.
Circuit Court of Appeals, Third Circuit.

Feb. 19, 1932.

Joshua R. H. Potts, Eugene Vincent Clarke, Basel H. Brune, and Howard S. Laughlin, all of Chicago, Ill., for appellant.

Charles Neave, of New York City, Cyrus W. Rice, of Grand Rapids, Mich., Merrell E. Clark, of New York City, and William Cyrus Rice, of Grand Rapids, Mich., for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

The plaintiff charged infringement of two patents granted to himself. On issues of validity and infringement the District Court held claims of both patents invalid for want of invention and dismissed the bill. The plaintiff appealed.

Letters Patent No. 1,509,211, Claims 3, 4 and 5.

The invention of this patent to Kausal, which we shall call the first patent, relates generally to electric lamps, and particularly to lamps of the type that are placed upon the outer side of aisle chairs and, by throwing a light upon the floor, are used to illuminate the aisles of darkened theatres. The purpose of such lights, positioned close to the floor and ranged along both sides of an aisle, is to guide a patron of the theatre to a seat and, after he has been seated, not to distract his attention from the stage or screen.

The preferred form of the structure, roughly stated, is a metal cylinder closed at the top, sides, and ends having a rectangular opening at the bottom through which rays of light from an inclosed electric bulb descend to the floor, the bulb or "source of light" being invisible when viewed at any angle except directly from below. Such a cylinder with such an open space was old. So, also, was such a cylinder with the space closed by clouded or ridged glass.

Up to this point Kausal did nothing more than take an old appliance from the art. But he claims to have done something at the open space which was new at least in this branch of the lighting art. Edgewise and parallel with each other across the narrow part of the opening he disposed a series of bars or slats, sometimes called vanes and louvers, being about one-quarter of an inch thick and being eight or nine in number (with corresponding spaces of equal dimensions) extending at right angles from the interior of the cylinder to and in some instances beyond its exterior. At the argument Kausal stopped here and represented that the essence of his invention is in this plurality of transverse vanes and spaces—spaces to let the light through, vanes to conceal the "source of light" from the eyes of the spectators and at the same time diffuse its rays.

In view of the simplicity of the device, and particularly in view of the art of lamp shades and other arts involving the shading, projection, deflection, and protection of light rays, such as a compass lamp (patent to Eaton and Burrow), lamp shades for road vehicles (Evans, Jones, Fuligni and Muhsgnug, Moriarity), screen for head lights (Martin), threshold illuminator (Moore), and protective lamp shades (Walker), we thought on the face of things invention was lacking, yet we were inclined to the belief that somewhere and somehow Kausal had accomplished something which he had not revealed or of which, perhaps, he was not aware. This belief was strengthened by tests we made of lamps of various designs, exhibits in the case, resulting in what we regarded as differences in the glow upon the floor very favorable to the lamp of

the patent. Accordingly we held the claims in suit valid, and infringed by the device of the defendant which had a similar plurality of vanes and open spaces.

The defendant filed a petition for rehearing on the issue of infringement, addressing our attention to an argument, as to limitations in the claims, based on the file wrapper which had escaped our attention, perhaps because the file wrapper had not been included in the printed record. However that may be, the matter was too serious to be disregarded; so we allowed the petition. At the rehearing, with the patent before us, it was clear that in each of the claims in suit there was a limitation of vanes "being outwardly beveled," "slats with outwardly beveled side faces," or vanes "in cross section being oppositely beveled"; and with the file wrapper before us it became plain that bevel of vanes in one direction or another was an element of the invention, so declared by the applicant himself or imposed by the Patent Office and accepted by him, and that it was only because the claims contained these limitations that they were finally allowed.

A file wrapper makes dreary reading; yet it is the foundation of the patent and must in this instance be looked into carefully.

The specification of the application disclosed vanes or slats, projecting outwardly from the opening and preferably tapering in opposite directions, the advantages of which are that light rays freely issue between the slats, "the cross-sectional taper of such slats overcoming the tendency thereof to cast shadows." The expression "tapered vanes" means vanes with beveled sides.

The application contained sixteen claims, some with and others without the limitation of beveled vanes. All claims which Kausal presented to the Patent Office of a scope sufficiently broad to cover devices which did not have outwardly beveled or oppositely beveled vanes were for that or some other reason rejected upon prior patents. In seeking reconsideration and making amendments the solicitor for Kausal emphasized the bevel of the vanes as an element of the invention and distinguished the devices of the references with bevels from the bevel of the kind he claimed. Finally, of the claims of the application maturing into the claims in suit, claims 11 and 16 were, without amendment, allowed as patent claims 3 and 5 with their limitations of "outwardly beveled" and "oppositely beveled" vanes. Claim 15, after amendment by inserting the limitation of "outwardly beveled" slats or vanes, was allowed as claim 4.

Excepting claims maturing into the three claims in suit and into claims 1 and 2 not in suit, each with a beveled vane limitation, all claims of the application were rejected or canceled.

■ We are constrained to hold that Kausal is bound by the limitations of the allowed claims voluntarily placed there in two instances by himself and forced there in the third instance by the Patent Office. In accepting the patent he acquiesced in its limitations and is estopped to assert for the allowed claims a breadth greater than that which he himself first gave them or later gave them by forced amendment. Liberman v. Ruwell (C. C. A.) 170 F. 590, 593; Yates v. Smith (C. C. A.) 271 F. 33, 35; Athey Truss Wheel Co. v. Moore & Moore, Inc. (C. C. A.) 46 F.(2d) 255, 257.

■ The court must take the claims as it finds them. Pittsburgh Meter Co. v. Pittsburgh Supply Co. (C. C. A.) 109 F. 644, 652. It must next determine whether they read on the alleged infringing device.

■ The defendant's lamp is, excepting the bulb, a cast-iron unitary structure, and in that respect it is distinguished from the two-member hingedly-connected devices of claims 4 and 5 of the patent. Also its vanes do not extend or protrude outside the casing but are flush with it, and in that respect they are different from the vanes of the device of claim 3. But more important—and this really is the decisive point—the vanes in the defendant's lamp are neither outwardly beveled nor oppositely beveled. They are, like those in the exhibit of the Kausal device which we mistakenly thought was made to conform to the patent claims, flat throughout and, with a minor exception, are of equal dimension from front to back.

The plaintiff says the defendant's vanes taper from front to back and that this taper is the bevel of the patent claims. It is true there is a taper in the defendant's vanes, not apparent to the ordinary eye, yet provable by a measuring instrument, made as a result of a manufacturing convenience or necessity in order not to rough up the sand when the casting is withdrawn from the mold. This taper is, we think, too slight to function like the bevel of the patent to overcome the tendency of vanes to cast shadows. At all events we find nothing in the evidence that convinces us it does so function.

We are driven to a finding of non-infringement.

Letters Patent No. 1,575,690, Claims 2 and 5.

The invention of Kausal's second patent in suit purports to be a combination of an aisle chair adapted for use in darkened theatres with a lamp of no defined character hidden in a chamber with a downwardly and outwardly inclined bottom—a lamp shade cut in half—seated or housed in the side or leg of the chair in such position that it will not protrude into the aisle yet will allow the rays of light to fall upon the floor. The claimed invention in this obvious combination is so unsubstantial that it does not call for discussion.

We direct that the decree of the District Court in respect to claims 3, 4 and 5 of Letters Patent No. 1,509,211 be amended and made to read that, if valid, they are not infringed. The decree dismissing the bill as to both patents will then be affirmed.