**HESPE et al. v. CORNING GLASS WORKS, Inc., et al.**
**No. 58.**

Circuit Court of Appeals, Second Circuit.
Dec. 1, 1930.

Cooper, Kerr & Dunham, of New York City (Drury W. Cooper and Allan C. Bakewell, both of New York City, of counsel; Alfred Burger, of Rochester, N. Y., solicitor), for appellant Taylor Instrument Companies.

Barton A. Bean, Jr., of Buffalo, N. Y. (Vernon M. Dorsey, of Washington, D. C., of counsel), for appellant Corning Glass Works.

Briesen & Schrenk, of New York City (Hans v. Briesen, of New York City, of counsel), for appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The appellants, Corning Glass Works, Inc., a manufacturer, and the Taylor Instrument Companies, a distributor, appeal from a decree which holds patents Nos. 1,561,925 and 1,561,926, valid and infringed by the manufacture and sale of their thermometer tubing. The first of these was granted on an application filed January 10, 1922, and the second January 26, 1925; the latter is said to be a continuation or division of the first. Both have been sustained as to their two claims.

The claims of the first, No. 1,561,925, are:

1. A thermometer comprising a glass tube having a longitudinally arranged drawn glass colored member forming a portion of the wall of the bore at the back side only thereof, and adapted to be covered by the fluid rising in the bore, when viewed through the front.

2. A thermometer comprising a lens front glass tube, a colored glass member forming one wall of the bore thereof, and so arranged that the fluid in rising will obliterate the colored member from view through the lens front of said tube.

The problem claimed to be presented, for which these patents are said to be a solution, is the rapid and accurate reading of the operation of the mercury column in a thermometer—the discovery of the exact location of the top of the mercury column. Metallic mercury is the one expansive material employed in thermometers with efficiency and satisfaction. The glass tube must be particularly clear. The mercury presents a bright surface, and, when passing through a brilliant glass column, the reflection or the absorption of light rays by the surface of mercury is so near that of the glass that the position of the mercury in the glass is difficult to discover. The diameter of the mercury column is small in relation to the surrounding glass tube, and it is also difficult to read. Other difficulties in reading are pointed out as due to reflective surfaces of the tubes or the reflective stripes that are not in themselves physical ribs but optical ribs, due to the high reflective index of the glass itself.

To overcome these difficulties, there came into the art the rising or falling of the mercury in a field of contrasting color. This was accomplished by coloring the back of the bore itself and by placing the stripe behind the mercury bore in the clear glass of the tube

and separated by colored glass from both bore and a light shield of white opaque glass which is to the rear of the stripe. The light shield was old and used before the patent in suit.

Appellant Corning Glass Works, Inc., manufactured the alleged infringing thermometer tubing under orders and instructions from appellant Taylor Instrument Companies.

The first patent purports to cover thermometer tubings in which a stripe of colored glass is made to form the back of the mercury bore and is in contact with the mercury column. The second patent provides a colored stripe in the colored glass at the rear of the bore and a white stripe or light shield behind the colored stripe. The later patent claims provide that the colored stripe be separated from both the mercury ball and the light shield by intervening transparent glass. It is said that, as viewed from the front or through the lens of the tube, the stripe appears to be the same width as the bore, with the result that, as the mercury rises, it obliterates the red in the tubings constructed under both the first and second patents. But the patentee does say that the same focal width may appear on both sides of the mercury without avoiding his invention. The concept of both these patents lay in the desire to make a mercury thermometer which will be as easily read as the colored spirit thermometer.

The patentee says that he took a piece of thermometer tubing which had a very large bore and covered the inside of the wall of the bore by rubbing red ink down it to see what the tubing would look like when it was partially filled with mercury, and that he took this to the appellant Corning Glass Works, Inc., and with the help of their men, skilled in the art, he obtained the desired result, namely, a tubing with colored glass forming the rear wall of the bore and in contact with the mercury column. This is the specific claim of his first patent as stated in his specifications. He shows two forms of thermometer tubes. In the first, the color member, which may be red, pink, or orange, is placed as a part of the wall of the bore of the tubing and in contact with the mercury column. Behind the bore, and spaced from it by intervening glass, is the opaque light shield. This light shield is not a part of the claimed invention of this patent. In his other form, it is clear that the color member

does not form the wall of the bore, but is spaced from the bore by the intervening transparent glass, and it is his intention that the colored member be wider than the mercury column and be seen at each side of the mercury column. He testified at the trial that "in the arrangement shown in figs. 6 and 8 the mercury column would not completely obliterate or cover the red and the red would appear both at the sides and at the top of the mercury column."

There is no disclosure in the specifications of the first patent of a colored stripe spaced from the bore by intervening transparent glass and of a visual width substantially equal to the width of the bore so that the rising mercury column would block out the red stripe.

■ The history of these patents in the Patent Office shows a limitation of the claims from those originally made by the patentee. As a result of being met by the rejection of his claims, he canceled his more general claims and narrowed them in his first patent, in which the stripe or colored member forms a wall of the bore as stated in claim 2 or a portion of the wall of the bore of the back side thereof as in claim 1. And a patentee is estopped to claim the benefit of his rejected claims or such construction of his amended claims as would be equivalent thereto. Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 14 S. Ct. 627, 38 L. Ed. 500; I. T. S. Co. v. Essex Co., 272 U. S. 429, 47 S. Ct. 136, 71 L. Ed. 335; A. G. Spalding v. Wanamaker, 256 F. 530 (C. C. A. 2).

The second patent is said to be a continuation of the first. Its novel feature is the separation of the colored or transparent glass of colored stripe, the light shield, and mercury bore; the stripe being the same visual width as the mercury bore. The patentee testified that he did not know how to make such tubing until four years after the first application was filed, which would imply that the first patent did not disclose it, and this is opposed to the claim that the second patent is a continuation of the first. Moreover, the second patent shows and describes the thermometer tubing having a colored stripe at the rear of the mercury bore and spaced from it by intervening transparent glass and behind the colored stripe, and spaced from it by the intervening transparent glass is an opaque light shield with the colored stripe of a visual width substantially equal to the width of the mercury bore. This combination was not described in the first patent.

564

■ However, the Frankenberg patent, No. 744,325, issued in 1903, we regard as an insurmountable prior art reference as to appellee's claims in both patents. Frankenberg says, as to the object of his invention, that it relates to thermometers, and is to facilitate the reading thereof, so that persons inexperienced as well as experienced in the use of such instruments may more readily and with greater accuracy determine their reading. For this purpose, he provides a thermometer in the prismatic body of which one edge is formed in a lens and the opposite side provided with a layer of opaque material having parallel streaks of different colors from the layer and at a distance apart corresponding approximately to the width of the magnified mercury thread. A thermometer under this patent was constructed under the direction of Mr. Norwood, who testified that, in making up the sample, he followed the specifications: "To obviate the objections, glass strips or streaks of opaque material differing in color from the opaque layer B are arranged on the inner side of the latter, so as to leave uncovered a central band of the opaque layer B of a width corresponding approximately to the width of the magnified mercury-thread." The specifications also provide that "any combination of color may be used; but more particularly I prefer to use yellow streaks on white background or yellow streaks on red background." Indeed, at the trial, Hespe, the inventor of the patent in suit, admitted that a slight projection of the colored stripe beyond the sides of the bore is not fatal if it does not extend too much, and, the more nearly the color member coincides with the width of the bore, the more pronounced is the contrast between the mercury and the colored stripe.

■ The Patent Office recognized that the Frankenberg disclosure contemplated a red background for the mercury bore and light color contrasting shields so arranged as to be obliterated by the rising mercury columns, but the appellee argues that he was the first to conceive the idea of making the stripe of red only wide enough to be entirely obliterated or hidden by the mercury column moving up, and was granted invention therefor. But Frankenberg's patent is a practical disclosure of the idea of a mercury column passing against a red background to aid in reading a thermometer. Whether or not the inventor regarded it as an improvement to make the red background wide enough, and only wide enough, to be obliterated by the passing up of the mercury column, it is not sufficient to

amount to invention. It is not contradicted but that glass workers had sufficient skill to draw on the Frankenberg tubing and one skilled in the art could improve thereon by narrowing the red background. Frankenberg's is a full disclosure if not a precise disclosure of all that is claimed for the patents in suit.

In the patent to Guilberg-Martin, No. 332,920, granted in 1885, for steam boiler gauges and thermometers, the inventor placed behind the bore of a tube, midway between it and the outside of the tube, a white strip which acts as a reflector, and on the middle of this strip, and applied directly to it, a colored strip which, as the patentee says, is "very much narrower than the white strip, so that it will show very distinctly on the same." There is a combined strip of red upon white behind the bore. When water or other transparent liquid is used in the tubing, it acts as a lens and magnifies that part of the colored strip below the level of the water, so that the part of the strip below the level of the water appears broader than the part above it, and thus a break appears in the width of the colored strip at the level of the water. Thus it appears that there was common knowledge of a device differing only in degree from what is claimed in each of the patents in suit. The older devices are formed in the same way from like materials and by the same kind of glass workers who made the tubing at the Corning Company's works.

What had been done previously justified the appellants in making their tubing with a compound stripe of red superimposed upon the white and located behind the mercury bore to accomplish the result desired and the means for securing that result.

Nor is there a record here of commercial success which might lend support to the claim of invention. It appears that the appellant Taylor Instrument Companies manufactured many types and kinds of thermometers, and the type of tubing charged to infringe has been confined to industrial thermometers as distinguished from clinical thermometers. The standard white back with its light shield space between the wall of the bore and the outside of the tube has been made and sold for many years as a product of this appellant. They still sell it at the same prices as the red back tubing charged to infringe, and it constitutes 90 per cent. of their business. Seven hundred and fifteen tubings are charged to infringe, as contrasted with the output of nearly a million of the old kinds in

the period of eighteen months preceding the trial. The appellees claim a sale of 241,271 of the patented type in seven years. It thus appears that this improvement, if narrowing the red background be such, has not won an outstanding commercial success in this art. It is an art old and well developed.

Both patents are invalid for want of invention and in view of the prior art.

Decree reversed.