## I. T. S. RUBBER COMPANY *v.* ESSEX RUBBER COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

No. 36. Argued April 13, 1926.—Decided November 22, 1926.

1. The Court may decline to consider points not presented in compliance with Rule 25, concerning briefs. P. 431.

2. A decree of infringement recovered by a patentee in a suit against a dealer in goods embodying his invention, does not bind by estoppel the manufacturer of the goods, from whom the dealer procured them, where the manufacturer refused to become a party to or assume any control over the suit and took no part in it otherwise than in the adjustment of the damages after a decree *pro confesso* had been entered. P. 432.

3. Patent 14,049, reissued, January 11, 1916, to the I. T. S. Company, as assignee, on an original patent to Tufford, of 1914, for resilient heels, is limited, as to Claims 5–9, to the specific form of three-point-contact heel lift, whose upper side and breast edges, as well as all other points of the upper surface, lie below the plane passing through and defined by the rear upper edge and breast corners of the lift. P. 434.

4. Where an applicant for a patent to cover a new combination is compelled by the rejection of his application by the Patent Office to narrow his claim by the introduction of a new element, he cannot after the issue of the patent broaden his claim by dropping that element. P. 443.

5. Where a claim to a combination is thus restricted to specified elements, all must be regarded as material, and the limitations so imposed by the inventor must be strictly construed against him and looked upon as disclaimers. P. 444.

6. And the patentee, having thus narrowed his claim to obtain the patent, may not thereafter, by construction or by resort to the doctrine of equivalents, give the claim the larger scope which it might have had without the amendments amounting to a disclaimer. P. 444.

7. The claims in suit were not infringed by the heels made by defendant, which are not three-point-contact lifts, their upper side edges having no vertical curve and lying entirely in the same horizontal plane as the rear edge and breast corners. P. 444.

1 F. (2d) 780, affirmed.

·Certiorari (266 U. S. 600) to a decree of the Circuit Court of Appeals which affirmed one of the District Court dismissing the bill in a patent infringement suit. The patent had been construed otherwise by the Circuit Court of Appeals for the Sixth Circuit in 260 Fed. 947. See also other cases cited in footnote 8 to the opinion.

*Mr. F. O. Richey,* with whom *Mr. Melville Church* was
on the brief, for the petitioner.

*Mr. Lucius E. Varney,* with whom *Mr. Frederick L.
Emery* was on the brief, for the respondent.

Mr. JUSTICE SANFORD delivered the opinion of the
Court.

This is a suit in equity brought by the I. T. S. Rubber
Company against the Essex Rubber Company in the Fed-
eral District Court for Massachusetts, for the infringe-
ment of United States patent No. 14,049, on resilient
heels, reissued to the I. T. S. Company January 11, 1916,
as assignee, on an original patent to John G. Tufford,
issued in 1914. After final hearing on the pleadings and
proof[1] the bill was dismissed by the District Court for
want of infringement. This was affirmed by the Circuit
Court of Appeals, 1 F. (2d) 780. And there being a con-
flict of opinion with the Circuit Court of Appeals for the
Sixth Circuit as to the scope of the patent, this writ of
certiorari was granted.

The Essex Company, which manufactures and sells the
heels alleged to infringe, expressly admitted the validity
of the reissued patent. And the only questions are:
First, whether it is estopped to deny infringement; second,
if not, whether infringement is shown.

1. In the courts below the I. T. S. Company relied on
estoppels by reason of adjudications in various prior suits
brought by it in the Sixth Circuit against dealers in the
Essex Company's heels. In the brief for the I. T. S.
Company in this Court it is asserted, in general terms, that
the action of the Essex Company " in suits brought against
its jobbers in the Sixth Circuit estop it from denying in-

---

[1] Various intermediate proceedings, on a preliminary motion to dis-
miss, appear in 270 Fed. 593 (D. C.), 276 Fed. 478 (C. C. A.), and
281 Fed. 5 (C. C. A.).

fringement here," and that the Circuit Court of Appeals erred in holding that it was not estopped by the decrees in such suits. The argument in the brief, however, specifies and deals with only one of such prior suits; and there being as to the others no semblance of compliance with the requirements of Rule 25 of this Court,[2] we need consider only the suit specifically relied on.

That was a suit brought by the I. T. S. Company against one Wendt, a dealer in Essex heels of a type involved in the present suit, in which infringement of the patent was adjudged. The I. T. S. Company contends that the Essex Company, although not a party of record, took entire control of the defense, participated in the suit until the final decree, paid all the expenses, and is now estopped from denying infringement as therein adjudged.

The material facts found by the District Court are: The Essex Company, after being notified by Wendt of the commencement of the suit, notified the counsel of the I. T. S. Company that it did not wish to, and would not, appear. Wendt thereafter voluntarily allowed the suit to go by default, and an order was entered taking the bill *pro confesso*. This was followed by an interlocutory decree *pro confesso* adjudging the infringement of the patent and Wendt's liability for damages and profits, and ordering an accounting. Down to the entry of this decree the Essex Company exercised no control over the management and conduct of the suit. Thereafter the Essex Company, having previously written Wendt that it would reimburse

---

[2] This rule provides that the brief for the plaintiff in error, appellant or petitioner shall contain, *inter alia*, a "concise statement of the case, containing all that is material to the consideration of the questions presented, with appropriate page references to the printed record," cl. 2(d); a "specification of such of the assigned errors as are intended to be urged," cl. 2(e); and an "argument exhibiting clearly the points of fact and of law being presented," cl. 2(f). 266 U. S. 671.

him for any losses he sustained by reason of the suit, suggested that he and counsel whom it had employed procure an adjustment of the damages and profits. Wendt and the counsel for the Essex Company thereupon secured an agreement to settle the case by Wendt's payment of $1,000. This was embodied in a stipulation signed by the I. T. S. Company's counsel and by the Essex Company's counsel as counsel for Wendt, and filed in the case. This stipulation, with the interlocutory decree, was thereafter made the basis of a final decree, re-adjudging the infringement, reciting the settlement, and adjudging that the I. T. S. Company recover of Wendt $1,000 and the costs of the suit. Wendt paid this judgment and was reimbursed by the Essex Company. The District Court further found specifically that, under the circumstances, the Essex Company did not control the suit; and held that, even though the I. T. S. Company understood that the counsel negotiating the settlement represented the Essex Company as well as Wendt in adjusting the damages, it was not estopped from contesting the question of infringement raised in the present case.

On the appeal the Circuit Court of Appeals stated that the record showed clearly that the Essex Company refused to become a party to the suit or assume any control over it, and took no part in the conduct or control of the suit, " but only in the adjustment of the damages " after the *pro confesso* decree had been entered; and approved both the findings and ruling of the District Court.

There is nothing which, under the well settled rule, *Del Pozo* v. *Wilson Cypress Co.*, 269 U. S. 82, 89, justifies us in disturbing the concurrent findings of fact of the two courts below; and we concur in their ruling that on the facts thus found the Essex Company is not estopped from contesting the question of infringement.

2. The question of infringement as here presented turns upon matters of law arising out of a file wrapper

defense interposed by the Essex Company, which insists that the reissued patent, although valid, was so limited in scope by the proceedings in the Patent Office that the Essex heels do not infringe.

The patent covers the part of a shoe commonly called a rubber heel, or cushion heel lift.[3] This is usually made of rubber, and is attached to the under side of the leather heel so as to furnish a yielding, resilient heel, giving softness to the tread and quietness in walking. These heels, which are in common use, are of two types, the flat and the concavo-convex, both of which were old when Tufford made his invention. The flat heel, which is the older, is cemented to the leather and then fastened on by nails or screws. The driving in of the nails or screws, however, has a tendency to cause the rubber to spring away from the leather around the edges and produce an open seam. In the concavo-convex type the body of the rubber heel is curved downwards. It is attached to the leather heel, without any cement, by placing its upper concave side under the leather, pressing it upward flatly and then nailing or screwing it on tightly. This, through the tendency of the rubber to resume its original curved form, tends to keep it tightly pressed upwards against the leather and overcome the tendency of the flat heels to separate from the leather at the edges. This characteristic of the concavo-convex heels, often called the "tight-edge effect," was referred to as early as 1889 in Ferguson's patent No. 638,228.

The Tufford heel is of the concavo-convex type. We insert here reproductions of Figure 2 of the drawings of the reissued patent, which is described as "a front to rear sectional view through the lift in position disposed against the under side of a shoe heel and immediately prior to application thereto," and shows one-half of the lift on a

---

[3] The under layers of shoe heels were called "lifts" by the cobblers.

median section; and of Figure 4, which is described as " a perspective view looking at the upper side of the lift removed."

The reissued patent contains ten claims. The first four, which repeat the claims of the original patent, relate merely to the form and position of the washers in a cushion heel lift, and to grooves, channels and suction areas in its concave surface. They are not here involved. The others are additional claims relating to shape defining improvements. The bill charges infringement of the new claims 5 to 9, inclusive. Claim 5 reads:

" A heel lift of substantially non-metallic resilient material having its body portion of concavo-convex form on every line of cross section, *the concave upper face lying entirely below a plane passing through the rear upper edge and the breast[4] corners of the lift."*

The last clause in this claim, which we have italicised—about which the present controversy turns—is contained in all the other claims in suit in identical or precisely equivalent words, except that in claim 8 the word " rear " does not appear before the words " upper edge."[5] For immediate purposes we treat claim 5 as typical of all the claims in suit, passing for the moment the consideration of the question whether there is any essential distinction in respect to claim 8.

---

[4] The " breast " is the front face of the heel.

[5] All these claims are set forth in full in the opinion of the Circuit Court of Appeals, at p. 781.

The Essex Company contends: (1) That by the proceedings in the Patent Office these claims were limited to the form of concavo-convex heel lift in which the concave upper face lies entirely below a plane passing through the rear upper edge and breast corners, that is, one in which, owing to the curvature of the upper face, only its rear edge and breast corners lie in the same horizontal plane, and its side and breast edges, as well as all other portions of its surface, lie below the plane passing through and defined by these three points—this being referred to as the " three-point-contact " form, since when the lift is brought in contact with the leather heel, before being flattened, only the rear edge and two breast corners will touch the leather. (2) That the claims, thus limited, are not infringed by the Essex heels, as their upper side edges, having no vertical curve, lie in and not below the plane passing through the rear edge and breast corners.

The file wrapper shows that on the application for the reissued patent it contained as first presented no reference to the position of the upper rear edge and breast edges of the lift in relation to the other portions of its upper surface. Several new claims were submitted some of which, at least,[6] described a lift having its attaching face concave on every line of cross section. These were rejected by the examiner on reference to Nerger's patent No. 661,129. Another set of claims was then substituted describing a heel lift of resilient material comprising a body portion of concavo-convex form on every line of cross section and normally held in such form by its own inherent resiliency. These were also rejected by the examiner on reference to Nerger.

After an interview with the examiner in which the applicant exhibited samples of his own lift and the Nerger lift, he then amended the specification by inserting the

---

[6] The file wrapper does not set forth all of these claims.

statement: " By reference to Figs. 2 and 4 of the draw-ings, *it will be seen that the concave upper face of the lift lies entirely below a plane tangent to the rear upper edge and the breast corners of the lift,* whereby to cause the entire margin of said lift to exert a uniform pressure on the heel of a shoe when the lift is positioned on the heel and the convex face thereof depressed to flatten said lift." He also substituted another set of claims, 5 to 9, inclusive. Claim 5—which was typical of all the others unless claim 8 was differentiated by the fact that the word " rear " did not appear before the words " upper edge "—read: " A heel lift of substantially non-metallic resilient material having its body portion of concavo-con-vex form on every line of cross section, *the concave upper face lying entirely below a plane tangent to the rear upper edge and the breast corners of the lift.*"

In presenting these amendments counsel for the appli-cant urged that Nerger's lift was not concavo-convex on every line of cross section since the deepest portion of the concavity in its upper surface was at the breast; and that its concave upper surface did not lie entirely below a plane tangent to the rear edge and breast corners. In replying, the examiner, after calling attention to the fact that on the application for the original patent the appli-cant had presented claims for a lift in which all the edges of the attaching face occupied the same plane—which were rejected—stated that Figure 2 of the drawings indi-cated the same construction and did not show a lift whose concave upper face lay entirely below a plane tangent to the rear upper edge and breast corners, as set forth in the amendment to the specification, since a point mid-way between the breast corners was in contact with the upper heel, and " a plane tangent to the rear edge and the breast corners would also pass through the entire front [breast] edge "; that the applicant's sample lift did " not correspond to the drawing; since all the points

of its breast except the two corner points lie below a straight line passing through these points"; that in "each of the claims 5, 6, 7, 8 and 9 the applicant specifies that the concave upper face lies entirely below a plane tangent to the rear upper edge and the breast corners"; and that these claims do "not read on the drawing, and are therefore rejected."

To meet this rejection the applicant further amended the specification by substituting for the prior amendment, the statement: "By references to Figs. 2 and 4 of the drawings, it will be seen that the concave upper face of the lift lies entirely below a plane passing through the rear upper edge and breast corners of the lift . . . *In other words, owing to the curvature of the concave attaching face of the lift, the rear upper edge and breast corners of said concave attaching face are disposed in a plane above the upper side edges and the breast edges of the lift."* He also amended each of the claims by substituting the words "passing through" for "tangent to"—corresponding to the change that had been made in the specification—and added claim 10, reading: "A heel lift of substantially resilient material comprising a body portion, the attaching face of which is concave and the tread face convex on every line of cross section, the rear upper edge and breast corners of the concave attaching face of the lift being disposed in a plane above the upper side and breast edges of said concave attaching face." In presenting these amendments counsel for the applicant stated that the matter quoted by the examiner from the file wrapper of the original patent merely showed, if anything, that error had crept into the prosecution of the original application, which should be corrected; that as Figure 4 of the drawings showed "that the breast lift was cut away on a curved line, the attaching face of the lift at the breast thereof must necessarily lie in a plane below

the breast corners and the rear edge of said lift or, in other words, the rear upper edge and breast corners of the concave attaching face are disposed in a plane above the upper side and breast edges thereof "; that the showing in Figure 2 was therefore obviously erroneous, and, although claim 10 read upon it without any correction, it did not clearly illustrate the applicant's invention; and that permission was requested to correct the drawing. This was granted, and Figure 2 was changed to the form which we have reproduced in this opinion, showing that the upper side and breast edges lie below a plane passing through the rear edge and breast corners. The new claims were then allowed, and the patent was re-issued.

It thus appears that the applicant acquiesced in the successive rejections by the examiner on reference to Nerger of claims for a lift having its attaching face concave on every line of cross section and for a lift of resilient material of a concavo-convex form on every line of cross section, and that to meet this reference he amended the specification so as to state not only that the concave upper surface lies entirely below a plane passing through the rear upper edge and breast corners, but that " in other words," owing to the curvature of the concave attaching face the rear upper edge and breast corners are disposed in a plane above the upper side and breast edges; amended the claims to describe a lift whose concave upper surface lies entirely below a plane passing through the rear upper edge and breast corners; and finally changed his drawing so as to correspond precisely with these amendments—and that then, and not until then, were the claims allowed.

We think that by this proceeding the claims were limited to the specific form of a " three-point-contact " lift, that is, to one in which, owing to the vertical curve of the upper side and breast edges, these edges, as well

as all other portions of the upper surface, lie below the
plane passing through and defined by the rear upper edge
and breast corners.     We cannot agree with the opinion of
the Circuit Court of Appeals for the Sixth Circuit in
*United States Rubber Co.* v. *I. T. S. Rubber Co.*, 260 Fed.
947, 948, that claim 10, which contains the limiting clause
" the rear upper edge and breast corners of the con-
cave attaching face of the lift being disposed in a plane
above the upper side and breast edges," is the only
one which is limited to the three-point-contact lift.     It
is true that if the limiting clause in claims 5 to 9, " the
concave upper face lying entirely below a plane passing
through the rear upper edge and breast corners," stood
alone, there might be some question as to whether the
side and breast edges were to be considered as a part of
the upper face.     However, the meaning of this clause was
made entirely clear by the last amendment to the specifi-
cation, adding to the previous statement that the concave
upper face lies entirely below a plane passing through the
rear upper edge and breast corners, that, " in other
words," the rear upper edge and breast corners are
disposed in a plane above the upper side and breast edges.
We are unable to agree with the view that the phrase " in
other words " was here used to connect alternative
thoughts which were not identical, and think that they
were used in their ordinary sense to introduce a specific
element of the identical matter previously described, pre-
cisely defining a lift whose upper surface lies below a
plane passing through the rear edge and breast corners as
one whose upper side and breast edges lie below this
plane—this being emphasized by the statement made by
counsel for the applicant and the corresponding change
which was made in the drawing.     The limiting clause in
claims 5 to 9 must therefore be read in the sense in which
it is thus defined by the specification, that is, as referring
to a three-point-contact lift whose side and breast edges,
as well as all other points in its upper surface, lie below

the plane passing through the rear edge and breast corners.

There is no ground for differentiating claims 5 to 9 from claim 10 in this respect in order to give effect to claim 10. The Circuit Court of Appeals for the Sixth Circuit expressly declined to rest its conclusion on this ground (p. 948). And as to this it suffices to say, that, as was pointed out by the District Judge, claims 5 to 9 are sufficiently differentiated in other respects by the presence of subsidiary elements relating to the character of the material, nail openings, etc., that do not appear in claim 10.

We find, further, no significance in the substitution of the words "passing through" for "tangent to" in the specification and claims. These phrases were used interchangeably by the examiner. The applicant pointed out no distinction in their meaning, and, so far as appears, merely adopted "passing through" as the preferred form of equivalent expressions. And they have no difference in meaning as used in the specification and claims; the one phrase as well as the other aptly defining the plane passing through the upper rear edge and breast corners.

We also find that the fact that the word "rear" does not appear before the words "upper edge" in claim 8 is not a ground upon which it may be differentiated from the others. It appears that this omission was inadvertent and unnoticed. The applicant called no attention to the omission and did not differentiate this claim from the others in his effort to avoid the reference to Nerger's patent. The examiner stated that "each of the claims 5, 6, 7, 8 and 9" specified a plane tangent to "the rear upper edge and the breast corners." And we cannot believe that if the applicant's counsel intended to differentiate this claim from the others by the omission of the word "rear," he would have failed to disclose the distinction

which he had in mind and permitted the examiner to pass upon the claim under a misapprehension as to its language. It was also stated by the District Judge that at the preliminary hearing on the motion to dismiss, the I. T. S. Company recognized that this clause in claim 8 read the same as in the other claims; that this had apparently been its position before other courts where these claims had been considered[7]; and that it did not change its position in this respect until after the Circuit Court of Appeals on the hearing in that court on the motion to dismiss had called attention to the omission of the word "rear." We concur in the finding of the District Judge that the omission of the word "rear" was through a clerical error due to oversight, and that both the counsel for the applicant and the examiner understood that it was contained in claim 8 as well as the others; and we are of opinion that the claim should be construed and have the same effect as if it had been included. This is not in any real sense, a re-making of the claim; but is merely giving to it the meaning which was intended by the applicant and understood by the examiner.

Furthermore, if by the omission of the word "rear" this claim should otherwise be regarded as calling for a lift whose upper face lies entirely below a plane passing through the entire "upper edge" and the breast corners, thereby making it a claim for a lift having all its upper edges in the same plane, such a construction would not only conflict with the express disclaimer of counsel for the applicant, but, as held by the Circuit Court of Appeals, render the claim invalid as being for a different invention from that described in the specification and drawings of the original patent. *Mahn* v. *Harwood,* 112

---

[7] Thus in the *U. S. Rubber Co.* case the Circuit Court of Appeals for the Sixth Circuit stated that "each of the claims 5 to 9, inclusive," contains the limiting clause referring to "a plane passing through the rear upper edge and breast corners."

U. S. 354, 359; *Parker & Whipple Co.* v. *Yale Lock Co.,* 123 U. S. 87, 97. And so construed, it would not read on the specification and drawings of the re-issued patent.

Having thus reached the conclusion that all of the claims in suit are limited to the three-point-contact form of lift, it is unnecessary to determine here whether in calling for a lift of concavo-convex form on every line of cross section, any of them are also limited to a " saucer-shaped," as distinguished from a " scoop-shaped," lift, that is, to one having in its upper surface a low spot centrally disposed which is below the lowest point in the breast edge, as has been held by the Circuit Courts of Appeals for the Sixth and Seventh Circuits.[8]

It is well settled that where an applicant for a patent to cover a new combination is compelled by the rejection of his application by the Patent Office to narrow his claim by the introduction of a new element, he cannot after the issue of the patent broaden his claim by dropping the element which he was compelled to include in order to secure his patent. *Shepard* v. *Carrigan,* 116 U. S. 593, 597. If dissatisfied with the rejection he should pursue his remedy by appeal; and where, in order to get his patent, he accepts one with a narrower claim, he is bound by it. *Shepard* v. *Carrigan, supra,* 597; *Hubbell* v. *United States,* 179 U. S. 77, 83. Whether the examiner was right or wrong in rejecting the original claim, the court is not to inquire. *Hubbell* v. *United States, supra,* 83. The applicant having limited his claim by amendment and accepted a patent, brings himself within the rules

---

[8] *Fetzer & Spies Leather Co.* v. *I. T. S. Rubber Co.,* 260 Fed. 939, *United States Rubber Co.* v. *I. T. S. Rubber Co., supra,* 950, *Tee Pee Rubber Co.* v. *I. T. S. Rubber Co.,* 268 Fed. 250, *Hill Rubber Heel Co.* v. *I. T. S. Rubber Co.,* 269 Fed. 270, and *I. T. S. Rubber Co.* v. *Tee Pee Rubber Co.,* 288 Fed. 794, in the Sixth Circuit; and *United States Rubber Co.* v. *I. T. S. Rubber Co.,* 288 Fed. 786, in the Seventh Circuit.

that if the claim to a combination be restricted to specified elements, all must be regarded as material, and that limitations imposed by the inventor, especially such as were introduced into an application after it had been persistently rejected, must be strictly construed against the inventor and looked upon as disclaimers. *Sargent* v. *Hall Safe & Lock Co.,* 114 U. S. 63, 86; *Shepard* v. *Carrigan, supra,* 598; *Hubbell* v. *United States, supra,* 85. The patentee is thereafter estopped to claim the benefit of his rejected claim or such a construction of his amended claim as would be equivalent thereto. *Morgan Envelope Co.* v. *Albany Paper Co.,* 152 U. S. 425, 529. So where an applicant whose claim is rejected on reference to a prior patent, without objection or appeal, voluntarily restricts himself by an amendment of his claim to a specific structure, having thus narrowed his claim in order to obtain a patent, he " may not by construction, or by resort to the doctrine of equivalents, give to the claim the larger scope which it might have had without the amendments which amount to a disclaimer." *Weber Elec. Co.* v. *Freeman Elec. Co.,* 256 U. S. 668, 677.

It results that as the claims in suit were limited by the proceedings in the Patent Office to the specific form of a three-point-contact lift, they are not infringed by the heels made by the Essex Company, which are not three-point-contact lifts, their upper side edges having no vertical curve and lying entirely in the same horizontal plane as the rear edge and breast corners. Nor can they be held to be infringements even if we assume that, as asserted, they function in the same manner as three-point-contact lifts, and would infringe, as was conceded in the District Court, if the claims were not restricted by the limiting clause and were entitled to a construction warranting a wide range of equivalents. By the limitation of the claims in the Patent Office proceeding to the three-point-contact lift the patentee made this precise form a

material element, and having thus narrowed the claims, cannnot, as was said in the *Weber Electric Company* case, now enlarge their scope by a resort to the doctrine of equivalents. This would render nugatory the specific limitation.

The decree is accordingly

*Affirmed.*