**BRUNSWICK–BALKE–COLLENDER CO. v. SEAMLESS RUBBER CO., Inc.**

Circuit Court of Appeals, Second Circuit.
April 8, 1929.

No. 276.

William H. Davis, Merton W. Sage, and Henry F. Parmelee, all of New York City, for appellant.

William A. Redding and Ambrose L. O'Shea, both of New York City, and Arthur L. Shipman, of Hartford, Conn., for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. This suit for infringement of patent No. 1,273,703, issued July 23, 1918, on an application filed January 5, 1914, resulted in a finding of the validity of the patent, but not infringement. The product constructed under the teaching of this patent is an unbreakable and permanently sanitary toilet seat. It is built up by using thoroughly dried layers of wood veneer, cemented together and shaped in such manner as to leave the core with a rough curved pubescent surface. This is covered with a semiplastic fine rubber, which is vulcanized into a hard rubber coating, which hermetically seals and covers completely the wooden core. The invention has won trade recognition, and now constitutes 14 per cent. of the total sold. The sole claim of the patent reads:

"A closet seat comprising a wood core consisting of a plurality of thoroughly dried layers of wood veneer arranged one upon the other with the grain of each layer disposed angularly with respect to the grain of the adjacent layer or layers, said layers being cemented together and said core having a rough pubescent surface, and a covering of hard rubber vulcanized on said core and united therewith throughout the entire surface of the core."

The adhesions of the hard rubber veneer to the core are so great that the rubber veneer and laminated wood core are an integral mass, due to the fact that thorough kiln drying of the core renders the fiber of the core more easy of penetration by the semiplastic rubber veneer and the pubescent surface proves an additional anchorage for the rubber. An integral band is formed, which is inseparable, and joins the surfaces of the inner and outer portions of the seat to each other. Thus there is produced a seat of laminated wood core, with a covering of hard rubber vulcanized on the core, and united thereon throughout its entire surface. This produces a sanitary and unbreakable seat, in which there are no crevices of any kind for the reception of germ-generating matter, and whose outer surfaces are immune from germ impregnation, and has been considered a decided step forward in the trade. What the inventor accomplished displayed inventive thought, unless there is an anticipation to be found in the prior art. Diamond Rubber Co.

v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527; Kurtz v. Belle Hat Lining Co. (C. C. A.) 280 F. 277.

Of that art we are referred to Stepp, patent No. 219,033, relating to covering wooden articles with hard rubber. Among these no mention is made of a toilet seat. This patent is for a process, and was granted in 1879. It did not solve this problem, which had been pressing for 20 years, and solved by the appellant's invention in 1914. The Barnes patent, No. 654,301, of 1900, suggested hard rubber for toilet seats. The patentee proposed a hollow toilet seat, having an upper or operative surface of hard rubber, to which is cemented or vulcanized a flat bottom of soft rubber. The operative surface of the seat is segmental in form, and is made of hard rubber to give it stiffness and rigidity. The crown formed an interior channel, across which were lateral webs perpendicularly disposed and formed integrally with the crown piece. These webs gave strength and rigidity to the crown piece, to reduce its weight and cost. A softened rubber base was vulcanized, cemented, or otherwise secured to the base of the crown piece. In Joralemon patent, No. 674,166, granted in 1901, there is described a celluloid covered seat. It provides for covering an ordinary wooden seat with a tubelike covering of sheet celluloid.

The appellant's inventor, in former patents Nos. 1,206,186 and 1,208,869, of 1916, tried a cover, as Joralemon did, except he used hard rubber. It was found that great pressure of vulcanization forced the rubber into the joints between the sections of the wood core, and this in turn forced the wood to the surface of the rubber, leaving exposed portions of the wood. A radical difference was found to exist between covering a seat with celluloid and hard rubber. Illustrating the difference in durability, the celluloid cover seat is guaranteed for five years, while the seat in the patent in suit is guaranteed for the life of the building. The Romunder patent, No. 848,690, granted in 1907, disclosed merely a toilet seat of sheets of wood veneer, united by cement under heat and pressure. There is no covering of rubber or other materials. Holding the patentee to the limitations of his claim by his specific definitions of the elements thereof, which are found in his specifications (I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 47 S. Ct. 136, 71 L. Ed. 335), he has made an invention which was not anticipated by the prior art.

Moreover, the patent is infringed. The appellee's seat has all the elements of appellant's. The covering of hard rubber is united with the core throughout the entire surface. The patent provides for a coat thoroughly dried. There is a plurality of cross-grained members of wood veneer, constituting the core. It further provides for placing it in a drying kiln under pressure, and so super-kiln dried that the last vestige of moisture has been expelled therefrom, and it says "the laminated wood core is an integral mass, because the thorough kiln drying renders the fiber of the core more easy of penetration by the semiplastic rubber veneer and the pubescent surface of the core proves an additional anchorage for the rubber." An analysis of the wood of one of appellee's seats showed the moisture to have been removed to less than 2 per cent. The method of drying, used by the appellee, brings about the same extraction of moisture and thoroughly dries the wood—at least, to the same extent—as is done by the appellant in making its core.

But the method of drying is unimportant. The degree of drying is important, because the patented seat attains the integral union of rubber covering with the core, by practically complete elimination of moisture before the core is hermetically sealed in the rubber and subjected to the vulcanizing heat and pressure. Nothing in the claim justifies a limitation as to a particular method or type of drying. Mowry v. Whitney, 14 Wall. 620, 647, 20 L. Ed. 860; Claude Neon Lights, Inc., v. E. Machlett & Son (C. C. A.) 27 F.(2d) 702. In appellee's seat there is the rough pubescent surface relied on to bind the core and rubber covering. The double band of rubber with wood is present in both products. In making the appellee's core, the turning tool used cuts across the grain of the wood, and this leaves a roughened open grained surface, into the pores of which the plastic rubber is forced, and to which it is vulcanized for the integral bond which inseparably joins the surfaces of the inner and outer portions of the seat to each other. The pubescence of the cut wood surface is present in both parties' cores.

Below it was thought that using layers of thin rubber as a binder for the building up of the core was not cementing together the layers of wood veneer, as "cemented together" is used in the patent. The patent does not provide, as thought below, for super-kiln drying for evaporating the solvent of the cement. The specification describes "a thin layer of heat and moisture-proof glue or cement." The built-up blank is then "placed in a suitable press, and the layers of veneer comprising the same are squeezed together under great pressure, so as to secure perfect

contact of all the surfaces with the cement." The specification says that after the cement is set the completed blank is again placed in a drying kiln under pressure and so super-kiln dried.

But cement is any compound which is plastic under certain conditions and under others develops tenacity, and can be used for holding together various materials. Encyc. Amer. vol. VI, p. 168, 27th Ed. The particular kind of glue or cement was not intended to constitute the patented novelty of the appellant. The appellee's seat has each of the elements of the claim; i. e., a plurality of cross-grained layers of wood veneer thoroughly dried, a roughened pubescent surface with the layers of wood in the core cemented together. Thus there is an infringement of the teaching of the patent.

Decree reversed.