## HEYWOOD–WAKEFIELD CO. v. FRANK & SON, Inc.

### No. 377.

Circuit Court of Appeals, Second Circuit.
Aug. 1, 1938.

Alfred B. Carb, of New York City, (Henry Jaffe and Saul Jaffe, both of New York City, of counsel), for appellant.

Moses & Nolte, of New York City, (Arthur W. Nelson, of Chicago, Ill., and Edmund Quincy Moses, of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

In a suit for infringement of U. S. Reissue Patent No. 19,141, brought by the complainant against the defendant, a final decree adjudging the patent valid and infringed was entered by consent on July 10, 1936. The usual injunction was issued and served on the defendant and on June 3, 1937, the complainant moved for a contempt order to punish the defendant for violating the injunction. The matter was referred to Robert W. Byerly as Special Master. The master reported that the defendant had violated the injunction and should be held in contempt, the report was confirmed and a decree in conformity with it was entered on December 15, 1937, from which the present appeal was taken. We think the court below was right and that the decree should be affirmed.

The patent in suit is for "spring base" furniture. The defendant made a chair in 1936 which was admitted by the decree to infringe the Larsen reissue patent under the consent decree of July 10, 1936. The question is whether a later construction of the defendant in 1937 is clearly enough within the scope of the patent to be held an infringement for purposes of a contempt decree.

The defendant in advertising its 1937 chairs issued a circular to the trade which started off with this statement: "Last year you purchased spring steel chairs from us and all reports indicate that these chairs proved satisfactory and a good seller." The circular clearly referred to the old infringing chair of 1936 and did not suggest that the 1937 chairs differed from those defendant had previously put on the market. As the master said in his report, the two chairs differed only "in the form and construction of (the) floor-engaging side members. In the 1937 chair, these consist of straight springs engaging the floor at their front ends and inclined upwardly from the floor and separate metal pieces riveted to these springs near their rear ends". In the 1936 chair "the floor contacting portions * * * have two sharply up-bent portions connected together by a flat portion". In each type of chair

the mid-portions of the side members are spaced away from the floor in order to permit them to flex when the chair is used and thus to counteract the tendency of the front part of the base to lift and the chair to become unstable when occupied. The devices described and illustrated in the Larsen patent as well as those of defendant's 1936 and 1937 constructions all avoid the danger of lifting at the front end and tipping backwards, inherent in chairs in which the floor engaging members have a continuous flat surface.

The principal question before us is whether the interpretation of the patent by the consent decree which found the 1936 chair to infringe the claims does not require us to treat the 1937 chair as in all respects equivalent. Defendant argues that the 1937 chair is not within the claims because it has not the "upwardly bowed floor engaging side member" as called for in Claims 1 and 2. This objection if good might literally apply to the 1936 chair inasmuch as the spacing of the mid-portion of the side members from the floor in that chair was accomplished through the use of members having a somewhat angular rather than arcuate construction. The argument is that the 1937 chair has bottom pieces that are only straight bars raised at the rear ends by projections riveted to them in order to raise them from the floor. These projections, however, make what amounts to a bend which exists although effected through the use of separate pieces of metal instead of by a flexion of the bottom pieces themselves. Where an identical result is achieved we ought as a matter of common sense to hold that the members are "upwardly bowed".

We must assume that the 1936 chair had "bowed" members or it would not have been held to infringe. In that construction the members were "bowed" at each end which enabled the chair to rest on four points of contact with the floor. But the 1937 chair was "bowed" at the rear end of each side member and thus also had four points on which to rest. It is as much "bowed" as various bows used for musical instruments. The word "bowed" in the patent should be read in connection with the purpose in mind rather than taken exclusively from medieval crossbows or from archery. As fairly read, we think that the floor engaging members of the 1937 chair come within the meaning of the word "bowed". The 1936 chair operates in substantially the same way as the chair of 1937. In each the side members are spaced from the floor so as to prevent the chair from tipping in use. It may be that in the Larsen device and in the 1936 chair there is a tendency for the members on which the chair rests to lengthen whenever they are flexed by the weight of the occupant and that their tendency in the 1937 chair is opposite, but the difference in this respect is slight and we see no reason to suppose that it is a critical feature of the patent or that the words "upwardly bowed" were chosen with any such characteristics in mind. What was wanted was side members which touched only at two points and did not lie flat on the floor with the consequent danger that the chair would tip. Moreover, the claims read in terms of structure rather than function.

The argument based on the file wrapper that the words "upwardly bowed" were introduced in the claims to avoid a previous rejection of claims having the words "floor engaging side members" carries no conviction that the words "upwardly bowed" were intended to do more than exclude bottom pieces that lay flat on the floor. There seems no reason to suppose that the words of limitation should be so strictly construed as to give them a meaning that would render the patent essentially worthless. Nor do we think that words of no more specific meaning than "upwardly bowed" are to be held within a straight jacket under such decisions as I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 47 S.Ct. 136, 71 L.Ed. 335.

It may be that if the defendant had contested the validity of the Larsen patent, it would have been held invalid for lack of invention in view of such prior art as British patent No. 12,981, A.D. 1890, to Fielding, the French patent No. 689,611 of 1930 to Lorenz, and the United States patent No. 1,791,453 to Mies, especially when taken in connection with United States patent No. 802,250 to White. But the defendant chose to concede validity and to make no opposition to a decree of infringement against its 1936 chair. Under these circumstances infringement by the 1937 structure seems so clear that there was no reason for requiring the complainant to proceed by supplemental bill rather than by motion to punish for contempt.

Decree affirmed.