**KEITH v. CHARLES E. HIRES CO., Inc.**

**No. 7.**

District Court, E. D. New York.

Sept. 5, 1939.

Frederick P. Randolph, of New York City (Theodore S. Kenyon and Douglas H. Kenyon, both of New York City, of counsel), for plaintiff.

Ralph E. Slayton, of New York City (Lawrence Bristol, of New York City, of counsel), for defendant.

CAMPBELL, District Judge.

This suit is brought for the alleged infringement of the two following described patents:

1. Patent No. 2,070,399 issued to Thomas H. Goldring, Lillian M. Goldring, administratrix of said Thomas H. Goldring, deceased, said Goldring and said administratrix assignors by direct and mesne assignments of one half to Charles E. Culpeper and one half to Claude D. Keith, for Container and Carrier for Bottled Goods, granted February 9, 1937, on application filed October 3, 1929, renewed November 7, 1936, Claims 3 and 4 being in suit.

2. Patent No. 2,094,744 issued to Claude D. Keith for Bottle Carrier, granted October 5, 1937, on an application filed September 22, 1932, Claims 1 and 2 being in suit.

The plaintiff, Claude D. Keith, is a citizen of the United States, and was at the time of the commission of the acts complained of, the owner of the patents in suit.

The defendant is a Delaware corporation, having an established place of business in the Eastern District of New York, where some of the acts complained of have been committed.

The defense of this suit is being paid for by Otey Y. Warren, who was formerly connected with the company which manufactured cartons for the plaintiff, and is now the manufacturer of the alleged infringing cartons, used by the defendant.

The alleged infringing cartons, are Exhibits 5, 6, 7 and 8, and are used by the defendant for the packaging of its bottled beverage, known as "Hires Root Beer".

It does not seem necessary to go into a long and detailed discussion of the need for a satisfactory container and carrier for bottled beverages, such as Coca Cola, Hires Root Beer, and the like, to open up the take-out market, for consumption of these beverages away from the place of sale.

For drug stores and fountains, where service was made on the premises, the old wooden cases were sufficient, but they were not suited for use as containers for bottles, which persons desired to purchase, and take home, because they were too heavy, and could not be conveniently handled.

A six-bottle closed carton was tried, for take-out sales, for home use, beginning about 1928, but, although extensive efforts were made to exploit it, it was a failure.

The two patents in suit are for an arrangement for the packaging of bottles in a single strip of carton, by means of appropriate locking and gripping apertures, which carriers or containers are cheap and satisfactory, and that when used by licensed Coca Cola bottlers, by the tens of millions, and with the large advertising of Coca Cola, have led to the opening up of thousands of new outlets in the taking-out market.

The defendant is now using cartons made by an ex-employee of the manufacturer of plaintiff's cartons, which are unlicensed by plaintiff, and defendant contends that it did not infringe, and that no license is required.

At the outset, let us remember, that neither of the Patents in suit is a pioneer patent, as containers, made of cardboard, carrying a plurality of bottles in segregated position in subdivided cardboard shipping cartons, were old and well known, and in addition, so was the use of the old fashioned fragile paper bag, for which the Goldring Patent states, that it may be used, as a substitute.

The invention of the Patent to Goldring, antedated the invention of the Patent to Keith.

Defendant, by answer, has raised the defenses of invalidity and non-infringment.

Claims 3 and 4 of the Goldring Patent, No. 2,070,399, are in suit, and read as follows:

"3. A bottle carrier comprising a strip having a middle-part for supporting the bottoms of bottles and side-parts extending oppositely from said middle-part and foldable upwardly; said side-parts having lower portions forming side walls for the carrier, intermediate portions folded inwardly and upwardly and upper portions in abutting relation having registering apertures to provide a handle for the carrier; said lower portions having apertures adapted to receive portions of the bottle sides, and said intermediate portions having apertures alined with the apertures in the adjacent lower portions and adapted to receive the tops of the bottles."

"4. A bottle carrier comprising a strip having a plurality of transverse parallel scored lines along which the strip is folded to form at the middle portion a bottom, side members extending oppositely from said middle part and foldable upwardly, said side parts having lower portions forming side walls of the carrier, intermediate portions folded inwardly and upwardly toward each other in inclined relationship to the said lower side-wall portions, and upper portions in abutting relationship having registering apertures to provide a handle for the carrier, said lower side-wall portions having a plurality of apertures to engage portions of the sides of rows of bottles, and said intermediate inclined portion having elliptical apertures aligned vertically with the apertures in the adjacent lower portions and adapted to receive the tops of the bottles."

The invention of that Patent resides in making a carrying container by the special arrangement of cuts and folds, recited in the claims, which has the resulting function of securely locking the bottles in the container, so that it has side parts consisting of lower, intermediate and upper portions, with two aligned apertures for each bottle, one in the lower portion and one in the intermediate portion. This, it appears, is quite clear, because in the Patent Office, Goldring asked for a claim which called for side parts, extending oppositely from the middle part, and foldable upward, with free ends, adapted to be brought together, to serve as a handle, with apertures in the side parts to receive the side of the bottle.

In order to secure the allowance of Claims 3 and 4 in suit, Goldring limited them, by the insertion of elements not called for in the cancelled claim, that is, the division of the side parts into lower, intermediate and upper portions, by fold lines, and two aligned apertures, for each bottle, one in the lower portion, of the side part, to receive the side of the bottle, and the other, in the intermediate portion, to receive the top of the bottle.

■ The cancelling of this claim, after rejection in the Patent Office, estops the plaintiff from asserting for Claims 3 and

4 the construction and range of equivalents which would have the effect of giving to these claims, the same scope as the claim which was rejected and cancelled. I. T. S. Rubber Company v. Essex Rubber Company, 272 U.S. 429, 444, 445, 47 S.Ct. 136, 71 L.Ed. 335.

■ The cracks, which occasionally occur at various points in the side parts of the Hires cartons, as a result of handling, can not be said to divide the side parts into lower and intermediate portions, nor can the single opening for each bottle, in defendant's alleged infringing structure, be held to be the equivalent of the two openings, called for by said claims in suit, as such a construction would give those claims the same scope as the rejected and cancelled claim. We can not consider arguments of Counsel, in the proceedings in the Patent Office, for the purpose of an estoppel. The plaintiff's contention, that no file wrapper estoppel exists, because the cancelled claim had a single aperture to receive the bottle, as does the cartons of the defendant, can not be sustained, because, to do so would, in the light of the device of the Schnorr Patent No. 1,563,-443 offered in evidence by the defendant, render the Goldring Patent in suit, invalid.

The make-up of the blank shown in Fig. 1 of the Schnorr Patent is, in most respects, substantially identical with the make-up of the blanks of the defendant's carton, of which complaint is made, except that the defendant's cartons have handle holes in the free end, and omit the small holes provided by Schnorr, in the middle, to receive the bottoms of the cones.

The prior art, offered on behalf of the defendant, Williamson Patent No. 1,194,-801; Thum Patent No. 1,627,583 and Burgess Patent No. 1,684,124 require no consideration, as they merely show some of the many ways in which cardboard has been cut and folded to provide supports and carriers for various articles and generally how limited was the room for invention, but, if Claims 3 and 4 of Goldring's Patent may be held to cover the alleged infringing cartons, then the Goldring Patent could not escape anticipation by the Schnorr Patent, No. 1,563,443 which called for apertures extending from the middle part towards the free ends of the side parts and is thus more limited than Claims 3 and 4 in suit, which merely

specify that these apertures are in the lower portion of the side part.

That the Schnorr Patent relates to a carrier for ice cream cones, and not for bottles, does not remove it from consideration as it is properly to be considered as analogous art to carriers for bottles.

Invention cannot be ascribed to the use of the Schnorr device as a carrier for bottles.

Both the carton blanks of the defendant, of which complaint is made, and of the Schnorr Patent, as shown, in Fig. 1 thereof, are in their make-up in most respects substantially identical, except that the defendant's cartons, of which complaint is made herein, have handle holes in the free ends, and omit the small holes provided by Schnorr in the middle part to receive the bottoms of the cones.

■ The cartons of the defendant, of which complaint is made herein, do not infringe the Goldring patent. Plaintiff's Exhibit 7 does not show any intermediate portion, as this carton is folded inwardly and upwardly. Where the bottle openings are, there are no intermediate or lower portions. It is all just one curved member. There is just one aperture, and only one portion. This one aperture receives, not the top of the bottle, but the neck of the bottle, therefore, there is no intermediate portion having apertures aligned with the apertures in the adjacent lower portion. There is no upper aperture above a lower aperture. In other words, there is no opening for receiving the top of the bottle in an intermediate portion, which is folded inwardly and upwardly, and aligned with an opening in the lower portion adapted to receive the bottle.

As to Keith Patent No. 2,094,744.

Claims 1 and 2 of the Keith Patent No. 2,094,744 are in suit, and read as follows:

"1. A bottle-carrier embodying, in combination, a carton comprising a strip of flexible material creased to provide a carton body having a middle part forming the bottom of the carton and side members extending oppositely from said middle part and foldable upwardly to form sidewalls of the carton at the lower portions of said side members and upper portions at least one of which forms a bottle neck-engaging section bendable into inclined relationship with said side-wall parts and in erected position extending across the necks and meeting the opposite side member along

a line below the tops of the bottles carried in the carton, said neck-engaging section having neck-gripping apertures the entire area of which is positioned below said meeting line and is spaced from the bottom of the carton a distance less than the height of the bottles to be carried, said neck-gripping apertures in carrying condition of the carton having top and bottom edges engaging opposite surfaces of the necks of the bottles below the tops thereof, while the carton bottom abuts against the bottle bottoms, said engagement of the apertures providing a gripping contact of the said edges of the neck-gripping apertures with necks of the bottles to cause a part of the weight of the bottles to be carried by said neck-engaging member, and said strip also having its free ends provided with hand-engageable means for carrying the carton."

"2. A bottle-carrier embodying, in combination, a carton comprising a strip of flexible material creased to provide a carton body having a bottom part for engaging the bottoms of two rows of bottles and side members extending oppositely from said middle part and foldable upwardly to form side-walls of the carton at the lower portions of said side members and the upper portions of both of said side members being creased to provide bottle neck-engaging sections extending in erected position of the carton toward each other across the necks of the rows of bottles being carried and having meeting edges disposed between the rows of bottles at a position below the tops of said bottles, while the bottle bottoms abut the carton bottom, said neck-engaging sections having neck-insertion apertures the entire areas of which are spaced from the bottom of the carton a distance below said meeting edges, said neck-insertion apertures in bottle-carrying condition of the carton having top and bottom edges engaging the necks of the bottles at opposite sides thereof and being arranged in erected condition of the carton to cause a gripping engagement by said top and bottom edges of the neck-insertion apertures with necks of the bottles and a supporting of part of the weight of the bottles, and said strip being also provided with abutting flaps connected to said meeting edges of said neck-engaging sections and having base portions positioned between and below the tops of said two rows of bottles, said flaps having registering apertures and serving as a carrying handle for the carton."

These claims both call for apertures in the upper inclined portion of the carton, with top and bottom edges of the apertures engaging the necks of the bottles at opposite sides thereof to cause a gripping engagement, whereby a part of the weight of the bottles is supported, making it possible to use a lighter-weight material for the carton.

The history of the prosecution of this Patent in the Patent Office is of great interest on the question of estoppel. We, of necessity, cannot consider arguments of Keith and his Counsel in the Patent Office, but only whether claims were rejected by the Examiner and such rejection accepted by the patentee, and new claims inserted, and that plaintiff is here and now attempting to so construe the claims in suit as to cover that which had been rejected by the Examiner, and such rejection accepted, by the patentee.

The Examiner suggested to Keith two claims for the purposes of interference.

The first of those two suggested claims was later held unpatentable and was cancelled by Keith.

The second of those two suggested claims subsequently became Goldring's Claim 3, and was cancelled by Keith.

After the interference was terminated in favor of Goldring, the Examiner rejected Keith's application as unpatentable over the issue of the interference.

The interference counts were cancelled by Keith.

The Examiner remained unconvinced after an interview, and after argument and affidavit by Keith, and still continued his rejection, saying: "The only difference in the claim from the said disclosure of Goldring is in the functional statements (Claim 12, lines 9 to 14; Claim 13, lines 12 to 19; Claim 14, lines 12 to 16; and Claim 15, lines 13 to 16) setting forth the limitation that the device claimed partly supports and holds in place by their necks, the carried bottles, which mere statement of function does not constitute patentable novelty or distinction."

Keith then rewrote his claims in an attempt to overcome the criticism as to functionality, interviewed the Examiner again.

The Examiner still found the claims unpatentable and refused to enter the amendment.

Keith then took his appeal, and at the same time asked that the same claims be entered for consideration on appeal.

The Examiner without giving any explanation, reversed himself, Keith dropped his appeal, and added another claim, which is not here in suit, and his Patent was allowed, from all of which, it seems to me that the principal feature of the claims in suit, as allowed, was the neck-gripping engagement by which a large portion of the weight of the bottle was said to be supported, enabling the use of lighter material for the carton, and, it was that feature which enabled Keith to secure the allowance of the claims here in suit.

I, therefore, conclude that unless the defendant's cartons, of which complaint is made herein, make use of this neck-gripping engagement to support a useful part of the weight of the bottles, the claims in suit would not be infringed. There was a sharp conflict in the evidence of the plaintiff's expert, Professor Masson, and defendant's export, Professor Endsley, as to the neck-gripping engagement with reference to the cartons of the defendant, of which complaint is made herein.

In support of his testimony, Professor Masson, plaintiff's expert, testified that he had made an experiment, that in the defendant's carton the sloping side walls support part of the weight of the bottle. He testified that a full bottle of Hires Root Beer weighed approximately 1.7 pounds, and the empty bottle approximately .9 pounds. He then produced, before the Court, plaintiff's Exhibit 13, in which two empty bottles were supported in a carton, from which most of the bottom had been cut out, and ascribed this result to neck-gripping action in the sloping part of the carton sufficient to sustain more than half the weight of the full bottle.

Professor Masson's demonstration had not been submitted to defendant's Counsel before the trial. On washing one of the bottles used by Professor Masson, Professor Masson's experiment was a failure, as that bottle was sticky to the touch.

Professor Endsley, defendant's expert, made his demonstration with defendant's Exhibit M, and although it was apparently substantially similar to plaintiff's Exhibit 13, the empty bottles could not be lifted at all. This is also true, as to the plaintiff's Exhibit 13, when the bottles of Professor Endsley's Exhibit M were substituted for the bottles of Professor Masson's apparatus. They could not be picked up.

I am convinced that the bottles of the Hire's carton are not lifted due to the effect of the neck-gripping engagement.

In the claims in suit of the Keith Patent, the neck-gripping function of the apertures, is defined in a slightly different phraseology, but in both the top and bottom edges of the aperture must engage the front and back of the necks of the bottles to cause a part of the weight of the bottles to be carried thereby.

This, it seems to me, Keith was compelled to claim, in order to overcome the Examiner's rejection and, therefore, he cannot now broaden his claims in suit, to cover the carton of the defendant, of which complaint is made herein. I. T. S. Rubber Company v. Essex Rubber Company, supra.

I cannot agree with plaintiff's contention that the defendant's structure, of which complaint is made herein, is the equivalent of the claims in suit, because to so hold, would be to relieve the plaintiff from the limitation which he was required to make, in order to secure his Patent.

Plaintiff, it seems to me, is claiming, as his invention, much more than is covered by the Patent, as granted, in the face of the limitation which he was compelled to make, in order to obtain the Patent, and I am convinced by Professor Endsley's demonstration, that the neck-gripping engagement, which is essential to any novelty of Keith's Claims 1 and 2 over Goldring, is not found in the defendant's cartons, of which complaint is made in this case.

■■ I cannot agree with the plaintiff, in his attempt to redraft the claims of the Goldring Patent, as the combination for which the plaintiff contends and is asserting and standing was never considered by the Patent Office Examiner, and therefore cannot be redrafted in that way. Even if the result accomplished by defendant's carton with a single aperture was the same that Goldring got with two apertures for each bottle, that would not establish patentable infringement, as a result is not patentable and infringement can be found only where the same result is accomplished by substantially the same means as those disclosed in the Patent in suit.

■ The cartons of the defendant, of which complaint is made in this case, do

**830**

not infringe the claims in suit of the Keith Patent or either of them.

I, having found that defendant's cartons do not infringe either of the Patents in suit, find no reason for any discussion of the question of validity, and will content myself with the statement that the invention of the Patents in suit seems to me to be a limited one, with a narrow range of equivalents.

A decree may be entered in favor of the defendant against the plaintiff, dismissing the complaint with costs.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law, in accordance with this opinion, for the assistance of the Court, as provided by the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and the Civil Rules of this Court.