## SCOTSMOOR CO., Inc., v. GLOVERSVILLE KNITTING CO.

### SAME v. SWEARS.

District Court, N. D. New York.
May 26, 1941.

Dennison & Pulsifer, of Johnstown, N. Y. (Alfred D. Dennison, of Johnstown, N. Y. of counsel), James McPhillips, of Glens Falls, N. Y., and George M. Prevost and Donald M. Wight, both of Washington, D. C., for plaintiffs.

Maider & Maider, of Gloversville, N. Y. (Lydon F. Maider, of Gloversville, N. Y., and Alva D. Adams, of Washington, D. C., of counsel), for defendants.

BRYANT, District Judge.

By stipulation, the two above named infringement suits were tried together and all evidence is to be used in either or both cases. Both actions involve claims 2, 4, 5 and 6, and the second action also involves claims 3 and 7, of the patent, numbered 2,090,982, issued to plaintiff as assignee of Allison E. Mills, August 24, 1937. The defenses are non-infringement and invalidity. The claim of invalidity is based upon lack of invention, disclosures in prior art, non-compliance with requirements of Sec. 4888, R.S. 35 U.S.C.A. § 33, and also upon the ground that Mills is not the true inventor.

The patent is directed at alleged improvements in knitted mittens and the method of making same. The particular improvements at issue, contemplated by the patent, reside in the manufacture of a seamless tubular knit mitten wherein the hand portion is composed of any suitable knit fabric and the tip portion is composed of a different type of knit fabric known as a float stitch which causes circumferential contraction. More particularly, the patent calls for a tip of float stitch fabric knit of two separate threads, both of which are knit into each course of the fabric, having the same number of wales as the hand portion. Among the advantages claimed, through the use of the float stitch fabric in the mitten tip, are circumferential contraction thereby facilitating the closing of the mitten through a neat appearing tip closed by the "self yarn" method and the ability to knit on one simple machine in continuous series the wrist, hand and tip portion of a mitten.

The last claimed advantage can be disposed of readily. The operating of a machine in court (I believe it was a "Brin-ton" Circular Machine) well demonstrated that inventive genius was not needed to knit a continuous series of mittens, even though the wrist, hand and tip portions are made of different types of stitches. Moreover, original claims 9–12 of the patent, which set forth the operation of producing blanks in the form of continuous tubing on a single machine, were rejected by the Examiner and were then dropped by the applicant.

The patent is what is called a secondary patent and must receive a strict construction. Plaintiff makes no claim that any of the stitches, purported to be defined in the patent claims, are new per se. Despite specification statements, it admits that all stitches, purported to be covered by the patent, are old and well known. It disclaims any attempt to involve the doctrine of equivalents. The patentable novelty or improvement, if any, must be limited to the manufacture of a seamless tubular mitten having in its tip portion a float stitch fabric, formed by both threads being knit into each course thereof, containing the same number of wales as the hand portion, which tip fabric, made as stated, causes the mitten to have a narrowed tip. I cannot accept plaintiff's broad interpretation that the patent is not necessarily confined to floats which cause circumferential contraction. The specifications stress this as one of the improvements contemplated. Each claim in question ends with the words "to render the tip portion narrower than the integral body portion". Unless this alleged improvement is stressed, then the whole purpose of the invention is lost. Certainly, float stitches, or a combination of float stitches, knit into a mitten, unless they cause circumferential contraction, do not facilitate the closing of the end nor tend toward the making of a neat tip. In fact, I believe they would hinder closing. In view of the prior art, I do not see how such a stitch, unless used in carrying out the improvements contemplated, would constitute invention.

Both defendants make their mittens with a wrist portion, a hand portion, embodying fancy patterns, on the end of which are knitted short tip sections of plain or jersey fabric, which are narrower than the hand portion, and then mock rib sections form the extreme tip, which are closed with self yarn. The mock rib fabric is so well known in the knitting art

that description seems unnecessary. It can be described as a combination of jersey and float stitches. There is one difference in the tip fabric of defendants' mittens. Defendant, Gloversville Knitting Company, uses two threads of the same count while defendant, Swears, uses two threads, one of which is of finer count than the other. This accounts for plaintiff's contention that defendant, Swears, infringes claims 3 and 7 in addition to infringement claims made against both. However, this difference requires very little attention. The use of two threads, one of which is of finer count, without other elements present, cannot be considered infringement. Its use, to cause contraction, was known to the art prior to the Mills patent. Claims 3 and 7 can only be infringed when yarns of different count are knit into the tip portion by stitches covered by the patent.

The records and exhibits lead to the conclusion that defendants' mittens do not infringe. Some of the reasons for my conclusion are:

I am satisfied that Mills did not contemplate his patent would cover mock rib fabric as a tip fabric. The record, and demonstrations made in court, satisfy me that mock rib fabric made of yarns of the same count will not contract relative to jersey fabric. The Mills patent expressly permits a jersey fabric hand portion with a tip portion made of float stitch fabric that narrows the tip portion relative to the hand portion. Manifestly, some particular stitch is called for. Mock rib would not cause the contraction. To say that the use of a mock rib tip infringes, when the hand portion is made of certain fabrics but does not infringe when made of others, is placing a broader interpretation than the patent can bear.

Plaintiff expressly admits that the patent is limited "to the use of a tip fabric knit of two separate threads, both threads being knit into each course and at least one of these threads being knit into alternate wales and floated across intervening wales". It further admits that, if both threads are not knit into each course, there can be no infringement. Defendants' tip fabric is the fabric shown in the patent to Scott, No. 1,317,897 (Figure 15). Defendants say that the so-called mock rib fabric is not made by knitting two threads into each course. Plaintiff says that it is. The fabric is made by knitting one yarn around the tube in every wale, forming short stitches in alternate wales and long stitches in the intervening wales, and then knitting the other yarn around the tube in alternate wales only and floating across the long stitches in the intervening wales. Plaintiff says that "in a tubular fabric a course is a complete row of stitches circumferentially of the fabric." In this definition of a course, plaintiff's expert is corroborated by the Older Patent, 5,552,583, which defines a course in substantially the same manner. Defendants say that each of the above operations constitute a course. They say that the knitting around the tube in every wale, as first above described, forms one course and that the knitting of the other yarn around the tube in alternate wales and floating across the long stitches forms a second course Their definition seems to be in accord with the definition given by Judge Hand in Regar & Sons v. Scott & Williams, 2 Cir., 63 F.2d 229, wherein he said "a 'wale' is a vertical row of loops; a 'course' is a horizontal row". Defendants are also corroborated by the examiner of patents because, in the course of Mill's application through the Patent office, the examiner stated that Figure 15 of Scott does not show both yarns knit into each course. Evidently he passed the patent because of plaintiff's limitation to a float stitch fabric wherein both yarns are knit in the same course. Plaintiff contends that the examiner was mistaken and further that it is not bound, in any manner, by the examiner's reasoning or committed to his mental processes. In view of the history of this case, as shown by the file wrapper, it well could be argued that plaintiff is limited by the limitation placed upon the claim by the written statement of the examiner. I. T. S. Rubber Company v. Essex Rubber Company, 272 U.S. 429, 47 S.Ct. 136, 71 L.Ed. 335. However, it is not necessary to consider that question. From the testimony in the case and a study of the Scott patent, I am satisfied that the examiner was right in his statement that the Scott patent does not knit each yarn into each course. I shall follow the definition of a course given by defendants. If I am wrong in my interpretation of the Scott patent, the error is not injurious to plaintiff. If the Scott patent discloses the knitting of both yarns into each course, it clearly anticipates plaintiff's patent and defendants cannot be held to infringe through the use of the stitches disclosed by Scott.

Defendant, Swears, produced, commercially, mittens having mock ribbed tip fabrics and hand portions of different fabrics prior to the date of the Mills' application (Exhibit 43). Plaintiff says these mittens do not anticipate because, the tips being closed by sewing, they cannot be classed as seamless knit mittens. The first step in their making was the knitting of seamless mitten tubes. At the time of their manufacture the so-called "self yarn" method of closing was known to the trade. Plaintiff makes no claim that his patent monopolizes this method of closing. He claims it facilitates it. In view of the prior art, it cannot be said that closing a mock rib tip by the self yarn method instead of by sewing constitutes invention. The Mills patent cannot deprive defendants of the use of a fabric which one of them had knit in 1932.

My holding of non-infringement in reality makes decision on the other issues unnecessary. However, because of the stress placed upon it, I have considered defendants' contention that all of the claims in suit are invalid for failure to comply with the requirements of Section 4888, R.S., and "Rule 36" of the Rules of Practice, 35 U.S.C.A. Appendix.

At most, the patent merely shows an improvement. The tip fabric must be made of float stitches which, when compared with the hand portions, produces contraction. It must have both threads knit into every course. Claim One (not at issue here) defines how both threads are knit to form a stitch and a float in every course and wale. (Fig. 5 of the patent). The claims in suit (both the article and method claims) do not show such definiteness. Apparently these claims are intended to cover particular stitches or combination of stitches. I say this because not all float stitches, nor all combinations of float stitches, can be knit in each course, and not all will cause contraction. The claims in suit specify how one of the threads is knit to provide floats in intervening or predetermined wales. I do not know how the other thread is to be knit into each course to cause contraction. The claims do not state. Plaintiff states that "the specification and claims of a patent are addressed to those skilled in the art". I readily admit that I am not skilled in the knitting art. The witnesses, who were so skilled, have not shown me how the second thread can be knit into each course other than as specifically set forth in the patent. This indefiniteness applies to claims 3 and 7 as well as the others, because the evidence shows that, for many years, yarns of different count have been used to cause both contraction and expansion.

I hold that the claims in suit must be limited to the particular stitches disclosed. If not so limited, they are invalid because incomprehensive and indefinite. In re Ellis, 37 App.D.C. 203, does not apply to the facts in this case.

Defendants are entitled to judgment. Findings and conclusions may be presented on notice.